After the trial court entered judgment based on a jury verdict in favor of the defendant, Sue Francis Byars, Bank Independent timely moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The motion for new trial was denied, and Bank Independent appealed.
Before setting forth the facts of this case, we must set forth the proper procedural status and determine what is before us for review. Bank Independent moved for J.N.O.V., or, in the alternative, a new trial, on November 6, 1987. The record also discloses that on December 16, 1987, the trial court overruled the "motion for new trial." We see nothing in the record to indicate that the J.N.O.V. motion was ever ruled upon; we are cognizant, however, that, pursuant to Rule 59.1, Ala.R.Civ.P., the J.N.O.V. motion would be denied by operation of law 90 days after November 6, 1987. Bank Independent filed its notice of appeal on January 25, 1988 — during the pendency of its J.N.O.V. motion. "[A] party's notice of appeal works as a withdrawal of that party's pending post-judgment motion, whether the notice of appeal is given during the [original] 42-day *Page 433 
period [within which appeal must be taken], or at some later time during the pendency of the post-judgment motion."Herring v. Shirah, [Ms. 87-599, 1988, opinion substituted March 3, 1989] (Ala. 1988). Accordingly, in the case at bar, the only issue before us is the propriety of the trial court's denial of Bank Independent's new trial motion. With that in mind, we now set forth the facts necessary to resolve the issue.
On or about July 5, 1984, Jimmy and Sue Francis Byars, husband and wife, executed promissory notes in the amounts of $263,000.00 and $71,351.90 to Bank Independent. Jimmy Byars planned to use the funds to build townhouses. As collateral for the notes, the Byarses mortgaged two pieces of land. The Byarses subsequently defaulted on the notes, and Bank Independent foreclosed on the mortgages. Bank Independent, as sole bidder, purchased the townhouse property for $225,000.00; the other piece of property was sold to the highest bidder for $45,100.00. Bank Independent then sued the Byarses for the deficiency; they counterclaimed, alleging that the foreclosure sale was commercially unreasonable. Sue Francis Byars and Jimmy Byars were divorced, Jimmy Byars filed for bankruptcy, and Bank Independent pursued its claim solely against Sue Francis Byars.
Between the September 25, 1985, foreclosure sale and December 6, 1985, Jimmy Byars met several times with representatives of Bank Independent to negotiate settling the deficiency. On December 6, 1985, Jimmy Byars and lawyer Joe Fine, each acting on behalf of Sue Francis Byars, met with the president, the executive vice-president, and the loan administrator of Bank Independent to discuss resolving the problem of the outstanding deficiency. Accompanying Mr. Byars and Mr. Fine was David Sibley, who was interested in purchasing the property that Bank Independent had taken in the foreclosure. Witnesses testifying on behalf of both parties recalled an offer made to the Byarses during the course of the December 6 meeting. That offer consisted of the following terms and conditions: 1) Sibley would pay $50,000.00 cash as a down payment on the townhouse property; 2) Bank Independent would finance the remaining purchase price, $225,000.00, at a maximum interest rate of 14%; 3) Jimmy Byars would pay $10,000.00; 4) Jimmy Byars would satisfy a materialman's lien on the property; 5) the counterclaim would be dropped; and 6) in exchange, Bank Independent would drop its claim for recovery of the deficiency. The offer was to remain open until 1:00 p.m. on December 6, 1985.
Shortly before 1:00 p.m., lawyer Joe Fine asked the president of Bank Independent for more time. Fine explained that Jimmy Byars could not locate the holder of the materialman's lien during lunch. The president extended the offer until 5:00 p.m. that day.
By mid-afternoon, the record discloses, Jimmy Byars was ready to perform those obligations of Bank Independent's offer pertinent to him. Sibley was also ready to perform. At 3:43 p.m., Fine called Bank Independent's president to accept the offer on behalf of Jimmy and Sue Francis Byars and David Sibley. Fine was then informed that the property had been sold and thus the offer withdrawn.
At trial, the defense of Sue Francis Byars was that Bank Independent's offer and her subsequent acceptance amounted to an accord and satisfaction. Bank Independent points out that, assuming an offer was made, oral contracts for the purchase and sale of real property or for the assumption of the debt of another are barred by the Statute of Frauds. Section 8-9-2, Code of 1975, the Alabama Statute of Frauds, provides in pertinent part:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . . .
 "(3) Every special promise to answer for the debt, default or miscarriage of another; *Page 434 
". . . .
 "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller. . . ."
We turn our attention first to the question of whether the agreement between Bank Independent and Sue Francis Byars[1] (as negotiated on her behalf by Fine and Jimmy Byars) was barred by the Statute of Frauds.
First of all, we do not agree with Bank Independent that the agreement was "for the sale of lands . . . or of any interest therein." Code 1975, § 8-9-2(5). Rather, Byars agreed to pay cash, drop her counterclaim, and satisfy the materialman's lien; her other obligation under the agreement was to provide aperson willing and able to purchase the property in question. This last term was fulfilled by the production of Sibley. Thus the Bank Independent-Byars agreement was not a contract for the sale of land; there needed to be no writing, because Byars was not the "party to be charged" with consummating the purchase; and, hence, the argument based on § 5 of the Statute of Frauds is not available to Bank Independent in this context.[2]
Likewise, we reject Bank Independent's contention that its agreement with Byars constituted a "promise to answer for the debt . . . of another." Code 1975, § 8-9-2(3). Byars is not attempting to use the agreement for that purpose. Assuming for the sake of analysis that Sibley has agreed to answer for Byars's debt,[3] the correct application of the Statute of Frauds would arise in the context of a defense for Sibley if Byars attempted to enforce the agreement against him, the "party to be charged." We can articulate today the reasons for our conclusion on this point no better than our rationale was stated in a previous case:
 " 'The doctrine which distinguishes between an original promise — a new debt of the promisor — and a collateral undertaking — a guarantee or suretyship for the debt of a third person, is often difficult of application; but there are some tests, which may be regarded of controlling, though not conclusive consideration. The true test appears to be, whether the undertaking of the promisor was essentially a new debt of his own, while the payment of the third person's debt was a collateral or incidental consequence, or was the latter its principal and directed purpose. [Cite omitted.] Generally, any promise to pay another person's debt, which is not discharged or released by the terms of the promise, or other contemporaneous arrangement, is within the statute. To this rule there are exceptions. A party may make a valid oral contract, which operates to create a new debt of his own, if founded on a new and independent consideration, though the effect of the payment is to pay another's debt. In order, however, to have this effect, the essence of the new undertaking must be the payment of the promisor's own debt, by paying the debt of a third person.' Clark Wadsworth v. Jones, 85 Ala. 127, 130 [, 4 So. 771] (1887).
 "See, also, Gregory v. Hardy, 53 Ala. App. 705, 304 So.2d 209 (1974); Westmoreland v. Porter, 75 Ala. 452
(1883); Puckett v. Bates, 4 Ala. 390 (1842). *Page 435 
"This distinction between 'original' and 'collateral,' focuses on the nature of the promise made.
 " 'A promise which is within the Statute is often said to be "collateral"; if not within the Statute, it is called "original." "The terms collateral or original promise did not occur in the Statute, and have been introduced by courts of law to explain its objects and expound its true interpretation."
 " 'Although the terms "original" and "collateral" do not obviate the difficulty of determining the ultimate question as to whether a promise is or is not within the Statute, they afford a convenient mode of expression for distinguishing between the cases within and those without the Statute: "The terms original and collateral promise, though not used in the Statute, are convenient enough to distinguish between the cases where the direct and leading object of the promise is to become the surety or guarantor of another's debt, and those where although the effect of the promise is to pay the debt of another, yet the leading object of the undertaker is to subserve or promote some interest or purpose of his own." ' (Emphasis supplied.) S. Williston, A Treatise on the Law of Contracts § 463 (W. Jaeger 2d ed. 1960)."
Herrington v. Central Soya Co., 420 So.2d 1, 3 (Ala. 1982). We hold that, at best, Sibley's was an incidental promise, the leading purpose of which was to promote Sibley's own interest. The Statute of Frauds, therefore, is not available to Bank Independent to bar Byars's accord and satisfaction defense.
Having concluded that the agreement between Byars and Bank Independent is unaffected by the Statute of Frauds, we next consider whether the agreement operated as a valid accord and satisfaction.
A valid accord and satisfaction is premised upon there being an express or implied contract between the parties. It follows, then, that in order for there to be a valid accord and satisfaction, there must be 1) proper subject matter; 2) competent parties; 3) assent or meeting of the minds; and 4) consideration. Farmers Merchants Bank of Centre v. Hancock,506 So.2d 305, 310 (Ala. 1987); Austin v. Cox, 492 So.2d 1021
(Ala. 1986); Ray v. Alabama Central Credit Union,472 So.2d 1012 (Ala. 1985); Craft v. Standard Acc. Ins. Co., 220 Ala. 6,123 So. 271 (1929). There is no question that a contract to extinguish a debt embraces proper subject matter, see Farmers Merchants Bank of Centre v. Hancock, supra, nor is it disputed that the parties here involved are competent. Furthermore, Bank Independent can hardly argue that there was no meeting of the minds. On cross-examination, Bank Independent's executive vice-president recalled and recited each term of the offer; his testimony on this point was consistent with Jimmy Byars's testimony as to what the terms were. Finally, we find adequate consideration: there was evidence that showed that Byars was ready and able to tender the $10,000.00, that he had negotiated with the materialman to satisfy the lien, and that a ready and able buyer (Sibley) had been produced to purchase the townhouse property on Bank Independent's terms — all within the time period for which the offer was open. Bank Independent extended an offer, and Byars timely accepted. We therefore conclude that the defense of accord and satisfaction was properly submitted to the jury and that there was ample evidence to support the jury's verdict.
Consequently, the judgment of the trial court denying Bank Independent's motion for a new trial is affirmed.
AFFIRMED.
MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.
[1] All references hereinafter to "Byars" shall be taken to mean Sue Francis Byars.
[2] The Statute of Frauds might be applicable if Sibley subsequently attempted to back out of purchasing the property. Concern over such a problem, however, is allayed by the fact that Sibley, on the next business day after the Bank Independent-Byars agreement, executed a written "Agreement" whereby he agreed to purchase the property according to the terms negotiated in the Bank Independent-Byars agreement. If Sibley did try to avoid the deal, this writing would be sufficient to enforce his obligation, to bind the "party to be charged."
[3] It is doubtful, however, that Sibley has truly agreed to answer for the Byars debt. More accurately, he has agreed to assume a new obligation that runs between Bank Independent and him, independent of Byars's obligation to Bank Independent. *Page 436