553 So.2d 529 (1989)
AT & T INFORMATION SYSTEMS, INC.
v.
COBB PONTIAC-CADILLAC, INC.
COBB PONTIAC-CADILLAC, INC.
v.
AT & T INFORMATION SYSTEMS, INC., and Paul Roy.
87-624, 87-648.
Supreme Court of Alabama.
August 11, 1989.
Rehearing Denied November 9, 1989.
*530 Sterling G. Culpepper, Jr. and W. Joseph McCorkle, Jr. of Balch & Bingham, Montgomery, for appellant/cross-appellee.
Roger S. Morrow and Joel H. Pearson of Morrow, Romine & Pearson, Montgomery, for appellee/cross-appellant.
HORNSBY, Chief Justice.
AT & T Information Systems, Inc. ("AT & T"), appeals from a judgment based on a jury verdict in the amount of $33,500 concerning its alleged fraudulent misrepresentations to Cobb Pontiac-Cadillac, Inc. ("Cobb"), with respect to a proposed sale and installation of a telephone system. Cobb cross-appeals, contending that the trial court erred in entering summary judgment in favor of AT & T and its agent, Paul Roy, on Cobb's breach of contract claim. We affirm both judgments.
In April 1985, Cobb approached AT & T regarding the possible purchase of a new telephone system, and was referred to Paul Roy, the AT & T account executive responsible for the Montgomery, Alabama, area. Roy was told that Cobb wanted to purchase a system that would connect two affiliated ventures with Cobb. Roy then recommended a system at a cost, including installation, of $98,000. Cobb declined.
Roy then consulted the AT & T "National Pricing Agreement Book" in his office and discovered that AT & T and General Motors ("GM") had previously entered into an agreement whereby GM was entitled to *531 volume discounts on certain purchases of telephone equipment. That agreement provided that GM would receive specified discounts, which, in the AT & T-Cobb transaction, apparently would have amounted to approximately $30,000.
Roy then called the AT & T National Pricing Hotline, a telephone bank in New Jersey established to answer questions from AT & T account executives regarding discounts. Roy learned that the GM discounts were still available, but he failed to determine whether the discounts were available to GM dealerships, such as Cobb. It was later determined that the discounts were not applicable to dealerships.
In June 1985, Roy advised Cobb that, pursuant to the agreement between AT & T and GM, Cobb was entitled to approximately a 30% discount on the total price of the proposed telephone system. Cobb's owner then arranged a meeting with Roy, and, prior to the meeting, requested that Roy unqualifiedly confirm the applicability of the discount. At the meeting, Roy unqualifiedly assured Cobb's owner that the discounts applied to GM dealerships and provided him with an AT & T sales contract form that they discussed in detail. The following clauses appear in the "Terms and Conditions" section of that contract form:
"AT & T Information Systems, Inc. (`AT & T-IS') and Customer agree that the following terms and conditions will apply to any order for the provision and/or sale of products and services to Customer by AT & T-IS which is accepted by AT & T-IS on or after the date the Customer signs this Agreement....
"This Agreement will become effective when signed by Customer and accepted in writing by AT & T-IS. Any order will be effective when accepted by AT & T-IS...."
The following statement appeared at the bottom of the contract form above the signature lines:
"CUSTOMER'S SIGNATURE BELOW INDICATES CUSTOMER HAS READ AND AGREES WITH THE TERMS AND CONDITIONS ON THE REVERSE HEREOF...."
During the meeting, Cobb's owner signed the form in the space designated "Customer," and Roy signed in the space designated "Received By." The space designated "Accepted By" was left blank and remains unsigned. Although Roy and Cobb's owner mutually understood the discount to be approximately $30,000, the contract document included neither an amount to be paid by Cobb nor a description of the equipment to be furnished by AT & T.
AT & T then began ordering and constructing the equipment for the new system. Cobb, in reliance upon Roy's representations that the new system could not be installed until Cobb's existing system was paid off, discharged the amount owed for its existing system. Although Roy denied making these representations, Cobb's owner and general sales manager discussed the payoff of the existing system in Roy's presence, and he did nothing to dissuade them.
After the meeting, Roy returned to his office with the contract to calculate the specific discounts. After calculating them, he forwarded the contract to AT & T's contract administrator, who later informed Roy that the contract had not been accepted because the discount did not apply to GM dealerships. Roy then informed Cobb that the contract had not been accepted, and that he had been mistaken when he had stated that the discount applied to GM dealerships. Cobb demanded AT & T's performance in accordance with the "contract," i.e., that AT & T sell the telephone systems at the discounted price. Roy then stated that AT & T's position was that the "contract" had never been accepted by AT & T, and that it was merely a proposed agreement. Following this conversation, Cobb's owner and general sales manager discussed this matter with AT & T's sales manager, who restated AT & T's position and informed them that Cobb's two alternatives were either to pay full price for the systems or to call off the transaction.
Cobb then sued AT & T and Roy in Montgomery County Circuit Court, alleging fraud and breach of contract. AT & T answered the complaint by denying liability *532 and averring that Roy lacked authority to bind AT & T to the contract. The trial court entered summary judgment in favor of AT & T and Roy on the contract claim, and the case was tried on the fraud claim.
Evidence of damages adduced during the trial included evidence of the difference between the price Cobb actually paid for an inferior system$68,860.25and the estimated discounted price of the AT & T system, $65,052.25. Cobb also argued that it was entitled to compensatory damages that included costs incurred in the prepayment of the lease, including penalties associated therewith, on its existing telephone system. The jury returned a verdict exonerating Roy and assessing damages of $33,500 against AT & T in favor of Cobb. The trial court entered judgment accordingly. AT & T thereafter filed a motion for JNOV or, in the alternative, for a new trial. The trial court denied this motion, and these appeals followed.

I.
AT & T argues that it was entitled to JNOV on the fraud claim for several reasons. We address each separately.

A. No misrepresentations
AT & T argues that all statements made by Roy and, thus, imputable to AT & T, were statements concerning acts to be done in the future. "Thus, in order to withstand a motion for judgment notwithstanding the verdict, Cobb must have adduced some evidence that [the statements made by Roy amounted to] promissory fraud." Brief of Appellant at 13. We agree with that characterization.
We stated in Padgett v. Hughes, 535 So.2d 140, 142 (Ala.1988):
"The elements of fraud are (1) a false representation (2) of a material existing fact (3) [justifiably] relied upon by the plaintiff (4) who suffered damage as a proximate consequence of the misrepresentation. To prevail on a promissory fraud claim such as that at issue here, that is, one based upon a promise to act or not to act in the future, two additional elements must be satisfied: (5) proof that at the time of the misrepresentation, the defendant had the intention not to perform the act promised, and (6) proof that the defendant had an intent to deceive."
In this case, it is undisputed that Roy, acting on behalf of AT & T, represented to Cobb that it was eligible for a substantial discount in connection with the purchase of a new system. That statement was untrue, and, if it mattered, nothing in the "contract" related that Cobb would not be entitled to a discount. We find that this constituted sufficient evidence of a false representation.

B. Unjustifiable reliance
AT & T next argues that, because Cobb would get no discount unless AT & T accepted the "contract," any reliance on Roy's misrepresentation was unjustifiable.
Whether reliance is justifiable in a given fraud action is a question of fact. E.g., Padgett v. Hughes, supra, 535 So.2d at 143. Consequently, where there is a scintilla of evidence that the reliance was justifiable, JNOV is improper.[1]
In the case at bar, Roy, on behalf of AT & T, approached Cobb with the offer of a discount and subsequently, upon Cobb's owner's specific request, unqualifiedly assured Cobb that the discount would apply. The "contract" on its face was silent as to the discount, and the record is barren of any evidence that, as a matter of law, would have made Cobb's reliance unjustifiable. We hold that the trial court correctly denied the motion for JNOV on this ground.

C. No present intent to deceive
AT & T next maintains that Cobb presented insufficient evidence that, at the time Roy represented that Cobb was eligible for the discount, AT & T intended not *533 to perform in accordance with Roy's representations. We disagree.
In Leisure American Resorts, Inc. v. Knutilla, 547 So.2d 424 (1989), we stated:
"It is axiomatic that a corporate employee's individual defense of lack of intent does not of itself end the inquiry with respect to the corporation's requisite intent to defraud. The corporation is acting as a legal entity and, if an individual corporate agent's conduct, though not fraudulent of itself, combines with the conduct of other corporate agents so as to amount to corporate fraud, the corporation may not escape liability simply by pointing to one innocent link in the chain. (See the discussion of Bolton Ford, infra.)
". . . .
Alpine Bay mistakenly sets forth the promissory fraud issue as whether there is sufficient evidence to support the finding that Mr. Marlow or Ms. Nelson, acting for Alpine Bay, intended to deceive the Knutillas and intended not to perform the repurchase agreement at the time it was made. The correct question is whether Alpine Bay had the requisite intent to defraud the plaintiffs. Drawing on the legal principles recounted above, we find that the facts of this case are that Alpine Bay (through Mr. Marlow and Ms. Nelson) promised to repurchase the timeshare unit from the plaintiffs; and the jury could reasonably infer from the evidence that, at the time of this promise, Alpine Bay knew (as Mr. Stafford's testimony demonstrates) that it would not perform this agreement if the plaintiffs did not satisfy an undisclosed criterion: a declaration by Alpine Bay that the plaintiffs qualified as a `hardship case.' Moreover, Alpine Bay's Brenda Johnson assured the plaintiffs that she would forward their request to the `appropriate person.'
"This issue was resolved by a unanimous Court in Bolton Ford of Mobile, Inc. v. Little [344 So.2d 1208 (Ala.1977) ]. In that case, a salesman who did not know that a car to be sold to the plaintiff had been previously wrecked represented to the plaintiff that it had not been wrecked. The plaintiff bought the car and later discovered that, in fact, it had been previously wrecked. This Court upheld a verdict, including punitive damages, on an intentional fraud count against the dealer. The Bolton Ford Court stated, `The evidence shows that several other agents of Bolton ... knew that the demonstrator had been in a wreck, and Bolton cannot escape liability merely because its salesman was not informed of the ... facts.' Bolton Ford, 344 So.2d at 1210. (Emphasis added.) In upholding the award of punitive damages, the Court held:
"`There is evidence in the instant case from which the jury could have concluded that Bolton Ford, knowing that it was not true, represented to the plaintiff that the automobile he purchased had not been in a wreck, and that such misrepresentation was made with intent to deceive the plaintiff.'
Id. at 1210.
"We perceive no reason why that analysis cannot apply in the promissory fraud context of this case. Both here and in Bolton Ford, the corporation's left hand did not know what its right hand was doing. Just as traditional agency law mandated the result in Bolton Ford, it also dictates the identical result here. There was ample evidence from which the jury could have reasonably found that Alpine Bay made a misrepresentation of material fact at a time when it had no intent to perform."
Id. at 426-27 (emphasis in original) (footnote omitted).
In the case at bar, there was evidence that AT & T, through Roy, represented that Cobb was entitled to a discount while AT & T knew that no discount was available to dealerships. Therefore, the jury reasonably could have concluded that AT & T intended to deceive Cobb.

D. Inconsistent Verdict
AT & T next contends that the verdict can not stand because it is facially inconsistent. In other words, AT & T argues *534 that because the jury exonerated Roy, it can not be held vicariously liable.
Generally speaking, a principal will be held liable for the tortious acts of his agent in one of two ways: vicariously, e.g., Bolton Ford, supra, or "where the principal participated in the tort to such an extent that he may be considered a joint tortfeasor." Courtesy Ford Sales, Inc. v. Clark, 425 So.2d 1075, 1077 (Ala.1983). Of course, a principal can also be held liable in tort without regard to whether his agent's conduct was tortious.
In this case, we note that Cobb did not appeal as to the judgment in Roy's favor on the fraud claim. We also recognize AT & T's argument:
"[T]here was no evidence that Roy, whose statements form the basis of Cobb Pontiac's complaint for fraud, intended to deceive Cobb Pontiac. To the contrary, there was uncontradicted evidence that Roy did not know that the statements he made about the discount were untrue."
Brief of Appellant at 20. Perhaps unwittingly, AT & T by this argument provides the justification for upholding the jury's verdict. Roy had no present intent to deceive Cobb when he represented that Cobb was eligible for the discountthe jury could have found under the evidence presented that Roy honestly believed that Cobb would receive the discount and that AT & T would perform. On the other hand, AT & T (through its agent) represented that Cobb would receive the discount when it knew that dealerships were not eligible for discounts.
That is not to say that AT & T is vicariously liable. Vicarious liability entails imputing the tortious act of the agent to the principal. Here, Roy's act was not tortious because he intended that AT & T would perform in accordance with his representations.
Accordingly, we reject AT & T's argument that the verdict was inconsistent.

II.
AT & T argues that it is entitled to a new trial because, it argues, the verdict was against the great weight of the evidence and the amount of damages awarded was excessive.
We are barred from reviewing any issue concerning the merits of AT & T's motion for a new trial. Our review of the record discloses that the trial court entered judgment on the jury verdict on November 16, 1987. On December 15, 1987, AT & T filed a "Motion for Judgment Notwithstanding the Verdict, or in the Alternative, for New Trial." On January 26, 1989, the trial court issued an "Order," the full text of which reads: "This matter coming on to be heard January 20, [1989], on Defendant's Motion for Judgment Notwithstanding the Verdict, and oral arguments having been heard, it is ORDERED that said motion is DENIED." The corresponding entry on the case action summary sheet reads: "Order filed denying Defendant's Motion for JNOV." On February 24, 1989, AT & T filed a notice of appeal.
As the foregoing makes clear, AT & T did not secure a ruling on the motion for new trial prior to filing its notice of appeal. "`[A] party's notice of appeal works as a withdrawal of that party's pending post-trial motion, whether the notice of appeal is given during the [original] 42-day period [within which appeal must be taken], or at some later time during the pendency of the post-trial motion.'" Bank Independent v. Byars, 538 So.2d 432, 432-33 (Ala.1988) (citation omitted); accord Herring v. Shirah, 542 So.2d 271 (Ala.1989). Bank Independent is procedurally analogous to this case; in that case, the motion for new trial was overruled, and the notice of appeal was filed during the pendency of the motion for JNOV. We were barred from reviewing the merits of the defendant's JNOV motion in Bank Independent, and we are likewise barred from reviewing the merits of AT & T's new trial motion here.

III.
Cobb, on cross-appeal, argues that the trial court erred in entering summary judgment on its contract claim against Roy and AT & T.
*535 There was no evidence of any contract between Roy and Cobb. Therefore, summary judgment was properly entered in favor of Roy on the contract claim.
As to the contract claim against AT & T, we have carefully considered each argument put forth by Cobb, and conclude that the trial court was correct in entering summary judgment in favor of AT & T. Inasmuch as the evidence supports the judgment on the fraud claim, under the facts of this case Cobb is precluded from receiving damages on the contract claim. Because the jury found, by obvious implication, that AT & T's intentional misrepresentation prevented any "meeting of the minds" as to the most material term of the transaction, no contract was capable of being formed on the terms contemplated by the parties. Cf. National Sec. Fire & Cas. Co. v. Vintson, 414 So.2d 49, 51 (Ala.1982). The remedies by fraud and by contract, under these facts, are mutually exclusive.

IV.
Based on the foregoing, both judgments appealed from are due to be affirmed.
87-624 AFFIRMED.
87-648 AFFIRMED.
ALMON, SHORES and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX, ADAMS and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
Fraud is successfully prosecuted by proving that
1) Defendant made a false representation;
2) Regarding a material existing fact;
3) Upon which plaintiff relied; and
4) As a proximate result was damaged.
See Ala.Code 1975, §§ 6-5-100 et seq.; George v. Federal Land Bank of Jackson, 501 So.2d 432 (Ala.1986). Promissory fraud, on the other hand, requires plaintiff to prove, in addition to the basic elements of fraud, that the defendant made the false representation with the present intent not to perform the future acts. This case requires the application of the stricter promissory fraud standard, due to the executory nature of the AT & T/Cobb contract, i.e., the agreement required acceptance by AT & T before becoming effective. That acceptance was never given, and, therefore, the contract remained executory. A proposal of this nature is viewed only as a solicitation to the prospective purchaser to make an offer, which offer may subsequently be accepted or rejected. See 77 C.J.S. Sales § 25 at 633 (1952). Inasmuch as AT & T did not accept Cobb's offer, the question is whether Roy's statements regarding the GM discount amounted to actionable promissory fraud.
AT & T attacks this judgment on a two-fold basis:
1) That Roy's statements were neither actionable as statements of a material existing fact, nor were they actionable as promises of future performance.
2) That Cobb's reliance on Roy's statements that Cobb would receive the GM discount was unjustified.
I am inclined to disagree, in part, with AT & T's first argument. The statements made by Roy were statements of material existing fact, since it is apparent from the record that Cobb's officers would not have purchased this telephone system without the discount because of its cost; however, I agree with AT & T regarding the actionability of Roy's statements as promises of future performance. In order for Cobb to recover in this promissory fraud action, it had to show that Roy and AT & T, at the time Roy informed the officers of Cobb that the GM discount was available, possessed the requisite intent to deceive. George v. Federal Land Bank of Jackson, 501 So.2d 432 (Ala.1986). Furthermore, the mere failure to perform a promised act is not, alone, evidence of intent to deceive at the time the promise was made. Russellville Production Credit Association v. Frost, 484 So.2d 1084 (Ala.1986). This case is very similar to McIntyre Elec. Service, Inc. v. SouthTrust Bank of Mobile, 495 *536 So.2d 1043 (Ala.1986), in which an employee of SouthTrust Bank of Mobile promised during negotiations with a debtor subcontractor that SouthTrust would continue to extend credit to debtor while the debtor attempted to improve its financial condition. SouthTrust subsequently extended credit, approving a series of loans, but two days after approving the last loan in that series, demanded payment of all loans and placed a hold on debtor's checking account as a set off against the loans. SouthTrust also wrote letters to businesses for which debtor had done work on which payment was due, requesting payment be made directly to SouthTrust. This Court held in that case that the elements of promissory fraud were not satisfied and, specifically, that the intent to deceive did not exist at the time the promise to extend credit to the debtor was made. After an exhaustive review of the record in this case, I find no evidence of AT & T's or Roy's intent to deceive Cobb at the time Roy made the statements regarding the GM discounts.
Turning to AT & T's second argument, I would hold that Cobb, as a matter of law, was not justified in relying on Roy's statements. Cobb argues that the case of Dickinson v. Moore, 468 So.2d 136 (Ala.1985), is controlling. This Court held in that case:
"`A party asserting facts cannot complain that the other took him at his word. "Positive representation of a fact cannot be counteracted by the implication that the party might have ascertained to the contrary; under such circumstances he need not institute an independent investigation."'"
468 So.2d at 138 (quoting Shahan v. Brown, 167 Ala. 534, 539, 52 So. 737, 738 (1910)).
AT & T counters this argument with its assertion that Tyler v. Equitable Life Assurance Society of the United States, 512 So.2d 55 (Ala.1987) is controlling precedent. In Tyler, this Court affirmed summary judgment in favor of defendant in a case which is factually similar to the instant case. This Court stated in that case:
"If a written contract exists, the rights of the parties are controlled by that contract; and parol evidence is not admissible to contradict, vary, add to, or subtract from its terms. Alabama Farm Bureau Mutual Casualty Ins. Co. v. Adams, 289 Ala. 304, 267 So.2d 151 (1972). In addition, fraud or misrepresentation cannot be predicated upon a verbal statement made before execution of a written contract when a provision in that contract contradicts the verbal statement. Taylor v. Moorman Manufacturing Co., 475 So.2d 1187 (Ala.1985). If a party has reason to doubt the truth of an oral representation or is informed of the truth before he acts, he may not reasonably act or rely on that representation. Bedwell Lumber Co. v. T & T Corp., 386 So.2d 413 (Ala.1980). Reliance is one of the elements that must be proven by a party charging fraud, and the reliance must be reasonable under the circumstances. Taylor v. Moorman Manufacturing Co., supra." (Emphasis added.)
512 So.2d at 57.
I agree with AT & T and would hold that Cobb's officers could not reasonably have relied on Roy's promises which were not stated in the contract that Mr. Henry Cobb signed. This transaction was one in which all parties were sophisticated businessmen dealing at arm's length. Furthermore, the contract reflects that Mr. Cobb read and agreed with the terms of the agreement as evidenced by his signature beneath the disclaimer. Cf. Traylor v. Bell, 518 So.2d 719 (Ala.1987) (car purchaser who could barely read could not recover for a fraudulent change in the sales price because the purchaser signed the sales contract which included the increased price and could have discovered the price difference).
A motion for JNOV tests the sufficiency of the evidence and requires the trial court to review its earlier ruling on the movant's directed verdict motion, Coastal Concrete Co. v. Patterson, 503 So.2d 824 (Ala.1987); in this case, the "scintilla rule" is the applicable *537 standard of review for directed verdict and JNOV motions, Marion v. Hall, 429 So.2d 937 (Ala.1983).[2] I cannot find the requisite scintilla of evidence. AT & T's motion for JNOV should have been granted.
For the above reasons, I must respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM.
AT & T argues that this Court committed error on original deliverance by failing to realize that its post-trial motions were for j.n.o.v. or new trial, alternatively. It claims that we treated the motions as two individual motions, one of which was denied and one of which was still pending at the time the notice of appeal was filed with the trial court. This argument is not well taken.
We realize that the motions were made alternatively for j.n.o.v. or new trial, and any language in our original opinion that does not reflect this recognition is in error. However, this state of facts does not change our analysis at this point. The propriety of addressing the new trial motion is still controlled by the case of Bank Independent v. Byars, 538 So.2d 432 (Ala. 1988). Bank Independent also concerned a situation in which alternative motions for j.n.o.v. and new trial were made, and there was no evidence in the record to indicate that one of the alternative motions had ever been ruled upon. In Bank Independent, we stated that the filing of a notice of appeal while one of the alternative motions is pending constitutes a withdrawal of that motion. Id. at 432-33. We decline to change our analysis of this issue.
OPINION EXTENDED AND APPLICATION OVERRULED.
HORNSBY, C.J., and ALMON, SHORES and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
MADDOX, ADAMS and STEAGALL, JJ., dissent.
NOTES
[1] Suit was filed prior to June 11, 1987, therefore the substantial evidence rule does not apply. Code 1975, § 12-21-12.
[2] This case was filed prior to the effective date of Ala.Code 1975 § 12-21-12, which enacted the use of the "substantial evidence" rule for cases filed after its effective date.