Leslie Craig McCullough filed a seven-count complaint in the Circuit Court of Colbert County against Danny Ray Inman, Donald H. McAnalley, the City of Tuscumbia, and various fictitiously named parties. McCullough sought damages from the defendants on claims based on wantonness, negligence, trespass, private nuisance, breach of contract, and misrepresentation, all concerning a drainage system and storm sewer located on the plaintiff's property.
On October 22, 1990, the trial court entered summary judgments for the defendants on all counts; McCullough appealed the judgment in favor of defendant McAnalley on the claims of breach of contract and misrepresentation. We affirm in part and reverse in part.
 FACTS
On or about December 21, 1988, McCullough entered into a contract to purchase a house from Inman. According to McCullough, *Page 231 
he began negotiations with Inman (the owner of the property) and McAnalley (the real estate agent) sometime prior to December 21, 1988. During the negotiation period, McCullough inspected the house on four occasions. In his deposition, McCullough conceded that he had had knowledge of a water problem prior to the purchase, but he contends that he did not know the full extent of the problem until months after he had moved into the house. McCullough further indicated that the water problem had caused him and his wife to consider not purchasing the property. He avers that it was only when McAnalley, the real estate agent representing Inman in the sale of the house, assured them that they would not have a water problem, that he decided to enter into the contract with Inman for the purchase of the house. In his deposition, McCullough testified as follows:
 "A. . . . I'm not interested in buying the house. And she said, 'Come down to our office. Don and I want to talk to you.' And I said, 'Okay.' And so we went down there and Don McAnalley said, 'I'll warranty the house for Danny Inman. He can give me $3,000, and I'll warrant the house against any water damage.' He said, 'Craig, I've been out there and looked at your property.' He said, 'I've built numerous houses, and I've built houses in a lot worse places than that and there never has — you just don't have a problem. Take my word for it, you don't have a problem.' He said, 'I would've done it for $1,000.' . . . He said, 'I guarantee you, Craig, you don't have a problem.' "
On December 21, 1988, the date McCullough contracted to buy Inman's house, McCullough also entered into a separate contract with McAnalley. In that contract, McAnalley agreed as follows:
 "I agree to do the necessary yard level alterations, down spout alterations, block treatments, and drainage procedures to insure that water shall not seep or run into the crawlspace under subject property. In the event of water seepage or running under or into the crawl space, any damage to the flooring system, subflooring or floor covering shall be corrected by Don McAnalley."
However, that contract also purported to relieve McAnalley from any repair concerning the following:
 "Footing and block settling or cracking due to any cause and any or all damages that may result. The obstruction of the city drain system that subject property drains into, or the inability of the drain system to accommodate the volume of water flowing into the system that could [a]ffect this property."
McCullough took possession of the house shortly after the contract was executed. Soon after McCullough moved in, serious flooding occurred in the house. McCullough reported the problem to McAnalley, and McAnalley made several unsuccessful attempts to cure the water problem. McCullough sued McAnalley, alleging that he had breached the contract and that he had recklessly, intentionally, or mistakenly misrepresented the extent of the water problem and his ability to cure it. McAnalley moved for a summary judgment on the grounds that the water problem was caused by the City of Tuscumbia's drainage system and, that, therefore, he had not breached the contract, and that he had not misrepresented any fact to McCullough concerning correction of the water problem. McAnalley submitted the affidavit of Don Price, an engineer with Paxton, Price Rider Engineering, Inc., in support of his motion. McCullough countered the motion for summary judgment with the depositions of Anna McCullough, Regina Coates, Donald McAnalley, and Danny Inman. The trial court entered a summary judgment for McAnalley.
There are only two issues before this court: (1) whether the trial court erred when it entered a summary judgment on the breach of contract claim, and (2) whether the trial court erred when it entered a summary judgment on the misrepresentation claim.
Rule 56, A.R.Civ.P., sets forth a two-tiered standard for entering summary judgment. The rule requires the trial court to determine (1) that there is no genuine issue *Page 232 
of material fact, and (2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed by this Court:
 " 'The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala. 1977); Shades Ridge Holding Co. v. Cobbs, Allen Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533
(Ala. 1980).' "
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quotingSchoen v. Gulledge, 481 So.2d 1094 (Ala. 1985)).
The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990).
Because this action was not pending on June 11, 1987, Ala. Code 1975, § 12-21-12, mandates that the nonmovant meet his burden by "substantial evidence." Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test, the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." W. Schwarzer, Summary Judgment Underthe Federal Rules: Defining Genuine Issues of Material Fact,99 F.R.D. 465, 481 (1982).
Our review of the record leads us to conclude that the trial court did not err in entering the summary judgment with regard to the breach of contract claim. The trial court, however, did err in entering the summary judgment with regard to the misrepresentation claim.
 BREACH OF CONTRACT
In opposition to the summary judgment motion as to the breach of contract claim, McCullough first argues that there remains a genuine issue of fact as to the cause of the water problem. McAnalley's affidavit and deposition; the deposition testimony of McCullough and his wife, Anna; and Don Price's affidavit make a prima facie showing that the water problem resulted from the inadequate city drainage system. Mr. Price stated in his affidavit that he was familiar with the property owned by McCullough and that he had "inspected said property . . . as an engineer and . . . investigated the drainage at . . . the residence occupied by the McCulloughs." He also stated:
 "There exists in this vicinity a 36' diameter storm drain. . . . And . . . a 78' circular concrete storm drain, or equivalent, would be required to handle this flow. It is my opinion that any water problem suffered by the McCulloughs on said property is due to the inability of the drainage system to accommodate the volume of water flowing into the system."
(Emphasis added.)
McCullough argues that Don Price's affidavit is inadmissible because some of the statements contained therein are inadmissible. The evidence given in an affidavit submitted in support of, or in opposition to, a summary judgment motion must be admissible at trial. Welch v. Houston County Hosp. Bd.,502 So.2d 340 (Ala. 1987). The party alleging inadmissibility must make the trial court aware of the *Page 233 
inadmissibility. In Perry v. Mobile County, 533 So.2d 602,604-05 (Ala. 1988), this Court held:
 "The issue of admissibility of the evidence in opposition to the motion for summary judgment was raised by [the defendant] for the first time on appeal. In response to his contention on this issue, we adopt the following language from C. Wright, A. Miller M. Kane, Federal Practice and Procedure: Civil 2d § 2738 (1983):
 " 'A party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection and, in the absence of a "gross miscarriage of justice," the court may consider the defective affidavit. This principle applies to affidavits containing evidence that would not be admissible at trial as well as to affidavits that are defective in form. This motion to strike must be timely, [and] the decision on that question is left to the discretion of the trial judge. It is clear that a motion to strike presented for the first time on appeal comes too late.'
" '. . . .
 "The foregoing is applicable equally to those affidavits in support of a motion for summary judgment and to those in opposition to such a motion."
At the hearing on the summary judgment motions, McCullough did not move to strike Price's affidavit, did not present evidence to counter the affidavit, and did not object to the affidavit. McCullough's first objection to the affidavit is on appeal. Because McCullough did not call the trial court's attention to the alleged inadmissibility of the evidence stated in Price's affidavit, he waived his right to object to its use.McMillian v. Wallis, 567 So.2d 1199 (Ala. 1990). Additionally, McCullough has advanced no legal theory as to why Price's affidavit would be inadmissible, and the trial court's consideration of this affidavit did not result in a "gross miscarriage of justice."
In addition to Price's affidavit, the record reveals other evidence to support the summary judgment on this issue. McCullough himself indicates the cause of the water problem in his complaint, which states: "Defendant City has constructed or had constructed storm water inlets directly in front of Plaintiff's house. Said storm water inlets are connected by a 30-inch concrete pipe. Said pipe is not capable of carrying the flow of water at certain times down Lamar Avenue. Therefore, flooding has occurred." McCullough further states that "the minimum acceptable storm sewer pipe to carry the flow of water down Lamar Avenue is 54 inches."
Further, in his deposition McCullough testified as follows:
 "Q. Have you had anybody look at it for purposes of telling you what needs to be done?
"A. Yes.
"Q. Who's done that?
 "A. An engineering firm — Larry Lynn's engineering firm. I don't know who he had — an engineer come out.
"Q. What did they tell you?
 "A. They said that in their opinion that [an] inadequate sewer system or drainage system [has] been put in the front yard. . . . And I think . . . that the pipes in there now were not adequate to handle the drainage at my residence."
Finally, in her deposition, Anna McCullough testified:
"Q. Have you seen that [hole] fill up?
"A. Yes.
 "Q. And rise indicating that that little pipe there is not taking the water away?
"A. Yes. "
This was sufficient to shift to McCullough the burden of moving forward with the evidence. In Black v. Reynolds,528 So.2d 848, 849 (Ala. 1988), this Court held:
 "Once the movant supports his motion [for summary judgment] by affidavits, testimony, or other evidence, . . . the adverse party may not rest upon the allegations or denials contained in his pleadings; he must respond and show that a genuine issue of material fact does exist. . . . Evidence offered in response to the motion, in the form of affidavits or *Page 234 
otherwise, must be more than a mere verification of allegations contained in the pleadings, and must present facts that would be admissible in evidence."
The record reveals no factual contention by any of the parties in their depositions that would rebut the prima facie showing that the flooding was caused by the inadequate city drainage system.
Because McAnalley's contract with McCullough unambiguously states that McAnalley was not responsible for any flooding caused by an inadequate city drainage system, we conclude that the trial court properly entered the summary judgment on the breach of contract claim.
 MISREPRESENTATION
The second issue raised on this appeal is whether the trial court erred in holding that there was no genuine issue of material fact with regard to whether McAnalley had misrepresented the extent of the water problem or his ability to cure it. McCullough alleges that the representation made by McAnalley induced him to enter into the contract with Inman. In order to maintain an action for fraud, a plaintiff must show that the defendant made a false representation of a material fact, that the plaintiff justifiably relied on that false representation, and that he was damaged as a proximate result.Coastal Concrete Co. v. Patterson, 503 So.2d 824 (Ala. 1987). We conclude that there is a genuine issue of material fact as to whether a misrepresentation was made, in light of McCullough's testimony that McAnalley stated, "I'll warrant the house against any water damage" and "I've built numerous houses, and I've built houses in a lot worse places than that and there never has — you just don't have a problem.' Take my word for it, you don't have a problem,' " and the testimony of McCullough's wife to the effect that McAnalley stated, "I've got this $3,000 check from Danny Inman. . . . It's probably just gonna cost me about $1,000 to do what I need to do. . . . [W]ater will never get under your house anymore," and McAnalley's statement that "I felt sure I could fix any water that hit on that property." Clearly, these statements, if made, concern a material fact. Further, McCullough was damaged by the flooding that occurred. Therefore, the crucial consideration is whether, under these facts, McCullough justifiably relied on McAnalley's statement that any water problem could be remedied.
Justifiable reliance is evaluated under the standard set out in Southern States Ford, Inc. v. Proctor, 541 So.2d 1081,1091-92 (Ala. 1989) (Hornsby, C.J., concurring specially), andHickox v. Stover, 551 So.2d 259, 263 (Ala. 1989). According to those cases, "'[a] plaintiff . . . has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." ' " Hickox v.Stover, 551 So.2d at 263. The standard of justifiable reliance requires that the party making the representation refrain from dishonest, untrue, and recklessly inaccurate statements and that the party receiving the representation be alert to statements that are patently false. See McDowell v. Key,557 So.2d 1243 (Ala. 1990), AT T Information Systems, Inc. v.Cobb Pontiac-Cadillac Inc., 553 So.2d 529 (Ala. 1989), andGrimes v. Liberty Nat. Life Ins. Co., 551 So.2d 329 (Ala. 1989), as further examples of this Court's adoption and use of the standard of justifiable reliance in the context of fraud claims.
McCullough inspected the house, and he was aware of a water problem before he purchased the house. Moreover, McAnalley disclaimed any responsibility for water problems caused by the City. However, McCullough indicated that the water problem caused him and his wife to reconsider the purchase of the house and that it was only when McAnalley, a real estate agent experienced in handling this type of problem, warranted the property against all water problems, that he decided to purchase the house. Taking McCullough's allegations as true,Hanners, supra, and in light of McAnalley's apparent expertise in home repair, a jury could find that McCullough's reliance on the representations allegedly made by McAnalley was justifiable. *Page 235 
Accordingly, the summary judgment is affirmed as to the breach of contract claim, but as to the misrepresentation claim it is reversed, and the cause is remanded for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
MADDOX and ALMON, JJ., concur in part; dissent in part.