This is a civil action for legal fraudulent misrepresentation. The trial court, at the close of plaintiff's evidence, granted defendant's motion for directed verdict. The plaintiff appealed; we affirm.
Carl Bowman is a poultry farmer. McElrath Poultry Company (McElrath) is a company in the business of producing breeder eggs and broilers. McElrath regularly contracts with producers such as Bowman. At one time, McElrath had forty-eight (48) producers, some of whom produced broilers (chickens sold for meat), and others who produced breeder eggs (eggs used to breed other hens).
A contractual relationship existed between McElrath Poultry Company and Bowman's first wife, Katherine Bowman, between 1973 and 1977. Carl Bowman and McElrath entered into written agreements in December of 1977, October of 1978, August of 1979, and November of 1979.
Under all of the written contracts of either Katherine or Carl Bowman with McElrath, the Bowmans were required to furnish the land, buildings, equipment, water, fuel, electricity, labor, and facilities necessary to the production of breeder eggs. The Bowmans gathered the eggs, cleaned the eggs, counted the eggs, packed the eggs, and sold the eggs to McElrath. In addition, from 1978 on, Bowman was required to keep records of daily egg production, mortality, and daily feed consumption.
McElrath was required to furnish a flock of chickens to the Bowman farm, and to deliver feed, medication, and sanitation *Page 880 
products as necessary to keep the chickens healthy and laying. McElrath picked up the eggs twice a week, paid the Bowmans once a month, and furnished to the Bowmans its written compilation of the number of eggs produced on a monthly basis.
McElrath paid the Bowmans certain amounts of monies per bird during the non-egg-laying cycle of the flock, and paid the Bowmans a certain amount of money per dozen eggs produced.
Carl Bowman was paid the following amounts by McElrath for the following years: 1976 — $41,248.45; 1977 — $39,998.74; 1978 — $40,476.90; 1979 — $54,346.05; 1980 — $51,770.32.
The last contract between Carl Bowman and McElrath Poultry Company was cancelled, per the contract provisions, by McElrath in March of 1980. Bowman testified at trial that in 1974, while his former wife had a contract with McElrath, he was approached by Billy Vann Croft, McElrath's field representative, who told him that if they wanted to keep the contract with McElrath, they would have to install automatic egg-gathering equipment. Croft left some brochures with Bowman and later went with him to visit a farm that had installed the equipment. Bowman stated that Croft told him that McElrath would not pick up any of the costs for the equipment, but would put in more chickens, and that the equipment would increase production.
In 1974 and 1975, Bowman purchased the equipment from a third party and had it installed. He also built two new chicken houses, in which he installed the equipment. His expense for the egg-gathering equipment and the alterations to his chicken houses totalled in excess of $70,000.
Bowman alleges that, between the time of installation and the cancellation of his contract, Croft, whenever asked, would tell him that the egg-gathering equipment was doing "just terrific," and that Croft told him for the first time in 1980 that his contract was being cancelled by McElrath because he was not getting as much production out of the equipment as other farmers were getting from hand gathering. Bowman alleges that because Croft kept all the egg production records, he had no way of knowing whether the egg-gathering equipment had improved his operation. Bowman contends McElrath misrepresented to him that the mechanical egg-gathering equipment would increase his production and was suitable for his operation and that McElrath concealed from Bowman its knowledge of the unsuitability of the equipment until 1980, when McElrath cancelled his contract. Bowman commenced this action on 4 November 1980.
The issue presented on appeal is whether there is evidence which reasonably affords an inference that the plaintiff was defrauded. The essential elements of a fraud claim, as required under the provisions of § 6-5-101, Code 1975, are: (1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) acted upon by the opposite party; and (4) reliance by the complaining party which was justifiable under the circumstances.
Our careful review of the record reveals the trial court was correct in granting a directed verdict in favor of McElrath. The facts presented by the plaintiff simply do not support a cause of action for fraud. McElrath's agent did give Bowman a brochure on an automatic egg-gathering system, prepared by the manufacturer of such a system, which indicated automation would increase egg production by as much as 10%. However, Bowman himself negotiated the purchase and installation of the system; McElrath was not involved, except to have encouraged Bowman to purchase the system. Therefore, Bowman could not have justifiably relied on representations made by McElrath, if any, that indicated the automatic egg-gathering system would function properly and improve Bowman's production.
Furthermore, Bowman had a responsibility, at least after 1977, pursuant to his contracts with McElrath, to maintain his own records. Prior to that date, the responsibility *Page 881 
of the maintenance of records was not set forth in the contract. It is clear, however, that Bowman was in a position to discover, more than a year before he filed suit, whether the automatic egg-gathering system had increased or decreased his production.
In short, we do not see any material evidence that suggests or reasonably implies that the defendant McElrath Poultry Company, through its agent, Croft, defrauded Bowman. The judgment below is therefore due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.