Appeal by plaintiff, the executor of the estate of Fannie M. Sims, from summary judgment for the defendants, Albert T. Sims, et al., in plaintiff's suit to quiet title to certain land in Dale County. We affirm.
The real property in question consists of 160 acres, more or less, conveyed in 1911 by Mazzie Woolley and her husband, W.P. Woolley, to T.W. Sims, a/k/a Tell Sims, for a consideration of $1,000.
T.W. Sims was married twice. His first wife was Daisy Sims. T.W. and Daisy had three children: Albert, Herman, and Frankie. Herman is deceased; his survivors are his widow, Dee Fant Sims, and their two daughters, Becky Surrency and Mary Lee Pitts.
Following the demise of Daisy Sims, and after he had purchased the property in question, T.W. Sims married Fannie Sims in 1911. T.W. and Fannie had eight children. With the exception of a two-year period, T.W. and Fannie Sims lived on the land in question until 1945, the year T.W. died intestate.
During the time that T.W. and Fannie lived on the property, several transactions concerning it occurred. In 1915, T.W. and Fannie Sims executed a mortgage on the property in favor of L.B. Sims, to secure an indebtedness of $290.30. This mortgage was satisfied in January 1924. During the pendency of this mortgage, T.W. and Fannie gave a warranty deed on October 23, 1923, to certain timber on this real property to the Ozark Lumber Company for a consideration of $500.
On April 5, 1926, T.W. and Fannie executed a mortgage on this property in favor of Mrs. S.L. Moncill to secure an aggregate indebtedness of $1,000, as evidenced by ten installment notes to become due annually. The first five of these notes were for $200 each, and they were due on October 15 in successive years beginning in 1926 and ending in 1930. The other five notes represented differing amounts of interest at 8 percent and were, likewise, payable on October *Page 724 
15 in successive years from 1926 to 1930. These notes were as follows: One note for $36.95 due October 15, 1926; one note for $56.00 due October 15, 1927; one note for $42.00 due October 15, 1928; one note for $28.00 due October 15, 1929; and one note for $14.00 due October 15, 1930. This mortgage was satisfied in 1935.
On February 18, 1929, T.W. and Fannie conveyed the 160 acres by warranty deed to C.J. Sims, the brother of T.W., for a consideration of $243.75.
Thereafter, in October 1934, T.W. and Fannie, who were still occupying this 160 acres, granted to one P.C. Benedict an oil and gas lease to this property for a term of five years for a consideration of $1.00 and a one-eighth royalty on the gas produced.
In 1935, T.W. received a right-of-way deed from Mrs. J.H. Marley covering a road to this 160-acre tract, which the Simses continued to occupy. And, in 1938, T.W. mortgaged this property under the Emergency Farm Mortgage Act of 1933 to the Land Bank Commission to secure a loan indebtedness of $1,000. This was satisfied in 1944, and, in the next year, 1945, T.W. died intestate.
In 1972, the eight children of T.W. and Fannie Sims conveyed their interest in the property in question to their mother.
This suit was brought in 1983 by Fannie Sims to quiet title in her name to the 160-acre tract. The defendants, Albert Sims, Frankie Sims Wright (children of T.W. and Daisy Sims), and Rebecca Surrency and Mary Lee Pitts (children of Herman Sims, deceased, who was also a child of T.W. and Daisy Sims), answered by claiming a three-elevenths interest in the property and they sought a sale for division.
Plaintiff Fannie Sims moved for summary judgment, submitting the affidavits of Billy Sims, James R. Fuqua, and Fannie Sims. Defendants responded with a memorandum and the affidavit of Rebecca Ann Surrency. Discovery ensued, with depositions of Fannie Sims, Albert T. Sims, and Rebecca Sims Surrency being taken. Several additional affidavits were filed by the parties. Defendants also moved for summary judgment. Meanwhile, Fannie Sims died, and, subsequently, Billy Sims, as executor of the estate of Fannie Sims, was substituted as the plaintiff. Lenora Duato and Susie Longman, heirs of C.J. Sims, were also added as parties defendant.
In due course, a hearing was held on the summary judgment motions. The plaintiff's motion was denied. The defendants' motion was granted, with the trial court entering an order finding the following facts:
 "On February 18, 1929, T.W. Sims and Fannie L. [M.] Sims purportedly conveyed the property in question to C.J. Sims. The Court finds from the undisputed evidence in the case, that C.J. Sims never took possession of the property and that T.W. Sims remained in possession of the property after the purported conveyance until the time of his death. The Court further finds that the heirs of C.J. Sims never considered that the purported instrument conveyed the land to C.J. Sims. The Court further finds from the undisputed evidence in the case that a mortgage to Mrs. S.L. Moncill was satisfied in 1935 and that the amount necessary to satisfy this mortgage was approximately the same amount as recited as consideration in the purported deed; that in 1934, Fannie Sims and T.W. Sims leased the oil and gas rights to P. [C.] Benedict on the property in question; that in 1938, Fannie Sims and T.W. Sims mortgaged the property in question to the Land Bank Commission and that in 1935, T.W. Sims received a right-of-way deed to the property in question. The Court further finds, from the deposition of the plaintiff, that it is evident that the plaintiff did not consider the land as being sold to C.J. Sims.
 "The Court finds, from the undisputed evidence concerning the conduct of the parties after the purported conveyance was made and from the testimony of the plaintiff, that the property in question was not conveyed to C.J. Sims, that neither he nor his heirs have claimed ownership to the property and the instrument *Page 725 
was executed as security for a debt and therefore T.W. Sims owned the property when he died in 1945."
On appeal, the plaintiff maintains that title to the land in question ripened in Fannie Sims by adverse possession and prescription. The plaintiff insists that the land went to C.J. Sims by deed in 1929, and that after T.W. Sims died, Fannie held adversely against the title of C.J. Sims. The defendants argue, on the other hand, that title to the property remained in T.W. Sims until he died in 1945, and that Fannie Sims had only a life estate therein and, therefore, could not gain title against the defendants, remaindermen, by adverse possession. We agree with the defendants' position.
It is a familiar principle that a trial court's factual findings based on ore tenus evidence are presumed correct, and that a judgment based upon them will not be disturbed on appeal unless it is plainly and palpably erroneous. Wadsworth HouseMovers v. Salvage One Demolition, Inc., 474 So.2d 686 (Ala. 1985).
Insofar as the effect of the warranty deed from T.W. and Fannie Sims to C.J. Sims is concerned, we find sufficient evidence on which to base a finding that this deed was intended to be a mortgage. As was stated in Roberson v. Faircloth,365 So.2d 1224 (Ala.Civ.App. 1978), cert. denied, 365 So.2d 1226
(Ala. 1979):
 "The principle supporting an action to have a deed, absolute on its face, declared a mortgage arises in equity. That principle has been expressed in many cases as follows: Equity looks through form to substance. Smith v. Thompson, 203 Ala. 87, 82 So. 101 (1919). Equity regards the substance not the form, and it matters not what form the transaction may assume. If it was intended by the parties to accomplish the securing of a debt, equity regards the transaction as a mortgage. Lewis v. Hickman, 200 Ala. 672, 77 So. 46 (1917)."
The trial court had before it the deeds and mortgages alluded to earlier. It could have taken note of the disparity in the consideration paid for the property and the consideration expressed in the deed to C.J. Sims. Cousins v. Crawford,258 Ala. 590, 63 So.2d 670 (1953). Indeed, Fannie Sims, herself, did not remember either conveying the property to C.J. Sims or borrowing money from him. Additionally, the mortgage payments to Mrs. S.L. Moncill in the amount of $242.00, payable October 15, 1928, is very close to the $243.75 that T.W. Sims received as consideration for the deed on February 18, 1929. The October 15, 1929, installment on the Moncill mortgage was $228.00; again, a sum close to the amount of the consideration for the deed.
It did not go unnoticed that T.W. and Fannie Sims continued to live on the property from 1929 until 1945, or thereabouts; that five years after the conveyance to C.J. Sims, T.W. and Fannie gave an oil and gas lease on the property; that they secured a right-of-way deed relating to that property in 1935; and that they mortgaged that property to the Land Bank Commission in 1938.
Not only did Fannie Sims remember granting the oil and gas lease, but she also remembered selling the timber and receiving the right-of-way deed. She testified, concerning the conveyance by her children of their interests to her, that "[T.W.] bought the thing before he married me and my name wasn't on the deed." The trial court could have drawn from the evidence regarding this transaction a reasonable inference that the parties, Fannie and her children, intended, in 1972, to convert Fannie's dower interest into a fee simple interest, their underlying premise being that T.W. had owned the property at his death.
The trial court having found that T.W. Sims owned the real property in question at his death, could his widow, Fannie Sims, hold adversely to the children of T.W. and Daisy Sims? Although the trial court did not make an express finding on this issue, it is nevertheless implicit in its order that Fannie Sims, as the widow of T.W. Sims, could have, under the law at the time of his death, only a life estate in his lands. *Page 726 
Code of 1975, § 43-5-1(1) (subsequently repealed). Worley v.Worley, 388 So.2d 502 (Ala. 1980). Defendants here, the children of T.W. and Daisy Sims and holders of a three-elevenths interest in the land of their father, were remaindermen. There can be no adverse possession by a life tenant against a remainderman. Lucas v. Brown, 396 So.2d 63
(Ala. 1981). Thus, Fannie Sims could not have acquired title to the interests of the children of T.W. and Daisy Sims by adverse possession.
A trial court's ruling must be sustained on appeal if any good ground is presented for its support, whether or not that ground is stated in the judgment. Dougherty v. Hovater,425 So.2d 1082 (Ala. 1983).
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.