575 So.2d 74 (1991)
Scott HARRIS and Celine Harris
v.
M & S TOYOTA, INC., d/b/a Toyota City.
M & S TOYOTA, INC.
v.
Scott HARRIS and Celine Harris.
89-404, 89-414.
Supreme Court of Alabama.
January 11, 1991.
James J. Bushnell, Jr., Rives & Peterson, Birmingham, for appellants/cross-appellees.
Richard A. Meelheim, Vowell & Meelheim, Birmingham, for appellee/cross-appellant.

ON APPLICATION FOR REHEARING
HORNSBY, Chief Justice.
This Court's opinion issued September 28, 1990, is withdrawn, and the following is substituted therefor:
Scott and Celine Harris, the purchasers of a used car, sued M & S Toyota, Inc. ("Toyota City"), on a fraud claim and obtained a jury verdict. The trial court granted Toyota City's motion for a new *75 trial on the ground that the court had erroneously allowed the Harrises to present evidence regarding an earlier transaction between Toyota City and another customer. The Harrises appeal this grant of a new trial. Toyota City cross-appeals, contending that the trial court should have granted its motion for judgment notwithstanding the verdict. We affirm the denial of Toyota City's motion for judgment notwithstanding the verdict, and we affirm the grant of a new trial.

Facts
Scott and Celine Harris, husband and wife, purchased a used automobile from Toyota City on September 19, 1985. Toyota City had purchased that car two days earlier at an automobile auction in Orlando, Florida. Toyota City's purchase receipt, which it received upon purchasing the auctioned car, explicitly states that the driver's door of the car had been painted and that there were 17,655 miles registered on the car's odometer. No other disclosures were made on that receipt.
The Harrises testified that prior to their purchase of the car from Toyota City, a salesman and the general sales manager of Toyota City orally told them that the used car had never been involved in an accident. The Harrises further stated that that oral representation regarding the condition of the used car induced them to purchase it. Approximately four months after the purchase of the used car, Mr. Harris was involved in an automobile collision that resulted in the total destruction of the car.
After that collision, the car was towed to an automobile repair shop and inspected by the shop's repairman for damage assessment. The inspection revealed the presence of "bondo," a paste commonly used by automobile repairmen to cover imperfections on the surface of a car normally resulting from dents. The presence of the bondo indicated that the car had been damaged and repaired before the Harrises' purchase, despite what they said they had been told about the car by Toyota City through its agents.
On March 7, 1986, the Harrises filed a complaint against Toyota City, seeking compensatory and punitive damages for fraud in the sale of the car. Toyota City denied that it committed any fraud. The case came to trial on August 22, 1989. During that trial, Toyota City argued that it was entitled to a directed verdict because, it said, the oral misrepresentations offered by the Harrises to prove reliance were contradicted by the terms of a written sales contract and were therefore inadmissible by operation of the parol evidence rule.[1] Following the trial court's denial of Toyota City's motion for directed verdict and after the conclusion of all the evidence, the jury rendered a verdict in favor of the Harrises and against Toyota City in the amount of $502,500.00.
On September 1, 1989, Toyota City filed a motion for judgment notwithstanding the verdict, reasserting its arguments made in support of its motion for directed verdict. In the alternative, Toyota City argued that it was entitled to a new trial because, it said, the trial judge had erroneously permitted the Harrises to introduce evidence regarding the settlement of a fraud complaint filed against Toyota City two years earlier. Following a hearing on the motions, the trial court set aside the judgment and granted Toyota City's motion for a new trial.
On November 14, 1989, the Harrises filed a motion to amend the order granting a new trial, which the trial court granted by amending its earlier order. The Harrises asked the trial judge to declare in his amended order his reason for granting Toyota City's motion for new trial. In the order, the trial judge stated the following:
"The Court having set aside the judgment in this case in an order dated 10-23-89, amends that order by adding the *76 following grounds for the Court's granting the Defendant a new trial.
"The Court allowed into evidence the... testimony of Ms. Annette Catlin.
"The Court granted Defendant M & S Toyota Inc.'s motion for new trial because the Court failed to give the jury a limiting instruction concerning the money paid to Ms. Catlin by the Defendant.
"The Court believes the failure to give a limiting instruction was error and warrants granting the Defendant a new trial.
 "Done this the 22[nd] day of November,
 1989.
 "s/Wayne Thorn, Circuit Judge"
On November 29, 1989, Toyota City's motion for JNOV was denied by operation of law, Rule 59.1, A.R.Civ.P. The Harrises appealed from the order granting Toyota City's motion for new trial, and Toyota City cross-appealed from the order denying its motion for JNOV.

Judgment Notwithstanding the Verdict
To determine whether the trial court properly denied Toyota City's motion for JNOV requires us to consider whether the Harrises produced sufficient evidence to show that Toyota City fraudulently induced them to purchase the car.
We note that this action was pending on June 11, 1987; therefore, the "substantial evidence" rule, Ala.Code 1975, § 12-21-12, does not apply, and the applicable standard of review is the "scintilla of evidence" rule, which was explained in Hammond v. City of Gadsden, 493 So.2d 1374, 1376 (Ala. 1986), as follows:
"A motion for directed verdict or JNOV is tested against the scintilla rule, which requires that a question go to the jury `if the evidence or any reasonable inference arising therefrom, furnishes a mere gleam, glimmer, spark, the least particle, the smallest trace, or a scintilla in support of the theory of the complaint.' Alabama Power Co. v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). In reviewing a trial court's ruling on these motions, the appellate court, guided by the standard of the scintilla rule, determines whether there was sufficient evidence below to produce a conflict warranting jury consideration. Baker v. Chastain, 389 So.2d 932 (Ala.1980). Like the trial court, the appellate court must view all the evidence in a light most favorable to the non-moving party. Ritch v. Waldrop, 428 So.2d 1 (Ala. 1982)."
We now consider whether there was sufficient evidence produced at trial to allow the jury to infer that the Harrises were fraudulently induced to purchase a used car from Toyota City. The essential elements of a fraud claim were recently set forth by this Court in Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746, 749 (Ala.1990):
"The essential elements of a fraud claim are: (1) misrepresentation of a material fact; (2) made willfully to deceive, or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. Bowman v. McElrath Poultry Co., 468 So.2d 879 (Ala.1985)."[2]
Because of the application of the "scintilla rule," our duty is to determine whether the Harrises produced a scintilla of evidence at trial on each of the elements of their fraud claim so as to warrant jury consideration. Most of the testimony produced at the trial was conflicting. The Harrises consistently testified that Toyota City's salesman and general sales manager told them that the used car that they were about to purchase had never been involved in an accidenta representation that the Harrises testified was a major factor in their decision to purchase the car.
In opposition, Toyota City consistently took the position during the trial that neither its salesman nor its general sales manager ever made such a representation to the Harrises. Toyota City argued that the *77 sales contract the Harrises signed expressly stated that no representations were ever made to the Harrises regarding the condition of the used car. Toyota City asserted at trial, and now asserts on appeal, that the alleged representations made by its agents to the Harrises were inadmissible in evidence to prove "reliance" because of the language in the sales contract and the application of the parol evidence rule.
This case certainly presents more than a scintilla of evidence that the documents in question were signed as a result of representations by Toyota City that the vehicle had never been previously damaged. There was also evidence in the record that the forms in question were not read by the plaintiffs and were signed in a perfunctory manner as passed over by Toyota City's agents. The jury could reasonably infer from this evidence that the documents, including the document containing the "as is" language, were executed simply as forms necessary to complete the purchase and were signed because the plaintiffs had already been assured that the car had not been wrecked.
Our law on the admissibility of fraudulent representations that are employed to obtain assent to a written contract has been stated as follows:
"On the issues of whether a contract is void, voidable or reformable because of illegality, fraud, mistake or any other reason and whether the parties assented to a particular writing as the complete and accurate integration of their contract, there is no parol evidence rule to be applied. On these issues no relevant evidence, parol or otherwise, is excluded. No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be. No one of the issues can be determined by mere inspection of the written document. See 3 A. Corbin Contracts, § 573 at 630 (1960). Accord, Battery Steamship Corp. v. Refineria Panama, S.A., 513 F.2d 735 (2d Cir.1975)."
Richard Kelley Chevrolet Co. v. Seibold, 363 So.2d 989, 993 (Ala.Civ.App.1978) (emphasis added). See Ramsay Health Care v. Follmer, supra, Crispell v. Sunbelt Chrysler Plymouth, Inc., 544 So.2d 939 (Ala.1989), Mann v. Cherry, Bekaert & Holland, 414 So.2d 921 (Ala.1982), Blake v. Coates, 292 Ala. 351, 294 So.2d 433 (1974), and Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301, 101 So.2d 78 (1958).
It follows that the trial court correctly allowed the jury to consider the effect of Toyota City's representations that the car had not been damaged. Nevertheless, the question of whether those representations provide a scintilla of evidence to establish the element of justifiable reliance must be considered. Justifiable reliance has been defined as follows:
"In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
"`[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth."` Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1091-92 (Ala.1989) (Hornsby, C.J., concurring specially)."
Hickox v. Stover, 551 So.2d 259, 263 (Ala. 1989). This Court has abandoned the requirement of "reasonable reliance," whereby a party making a false statement prevailed whenever the person defrauded did not investigate the statement in order to discover fraud.
The present standard of "justifiable reliance" requires the party making a representation to refrain from dishonest, untrue, or recklessly inaccurate or untrue statements. The party receiving the representation is required to be alert to statements that are patently false. Whereas the old standard of reasonable reliance placed a burden on the party to whom a *78 representation was madethe burden of discerning the truthfulness of a statementthe new standard of justifiable reliance places a burden on the party making the statementthe burden of knowing the truthfulness of a statement.
This approach continues the move away from the doctrine of "caveat emptor" to the modern perspective that parties to transactions should be able to rely on representations that are not obviously false. Instead of "let the buyer beware," the standard is becoming "let the liar beware." See McDowell v. Key, 557 So.2d 1243 (Ala. 1990), AT & T Information Systems, Inc. v. Cobb Pontiac-Cadillac, Inc., 553 So.2d 529 (Ala.1989), and Grimes v. Liberty Nat'I Life Ins. Co., 551 So.2d 329 (Ala.1989), as further examples of this Court's adoption and use of the standard of justifiable reliance in the context of claims alleging fraud. Viewing the evidence in the record in a light most favorable to the Harrises, we conclude that their evidence was adequate to establish justifiable reliance under the above standard.
We must also consider whether the Harrises presented a scintilla of evidence to establish that the representations were made "willfully to deceive" or "recklessly without knowledge." There was evidence that employees of Toyota City misrepresented the fact that the vehicle in question had been damaged prior to the sale. Toyota City employees also admitted that they were aware from inspection and from a receipt notation that the vehicle had had "paint work" done on it; this admission at least raised an inference of prior knowledge. Further, our law is clear that Toyota City may not defeat the inference that it was aware of this indicium of damage by showing that a specific salesman was not aware of it. Leisure Resorts, Inc. v. Knutilla, 547 So.2d 424 (Ala.1989), and Bolton Ford of Mobile v. Little, 344 So.2d 1208 (Ala.1977).
The knowledge of prior paint work constituted notice to Toyota City that it could not reasonably represent that the car had not sustained damage in the past, without some investigation on the part of Toyota City to substantiate that representation. There was evidence that, because of the paint differences, the Toyota City salesman was specifically asked about prior damage and that he specifically assured Scott Harris that the car had not previously been wrecked. These facts present at least a scintilla of evidence that this representation was made either recklessly or with an intent to deceive.
We will not hold that Toyota City, in making its sales pitch, was entitled to ignore the indication it had of damage. Such a holding would provide a seller with a strong incentive to make a cursory inspection, or no inspection, of its merchandise so that it could argue that a false representation arose from simple ignorance and was therefore not fraudulent. It would also be absolutely contrary to our policy of encouraging honest and reliable communication between parties in a business transaction. See Hickox, supra.
Because the record contains evidence of the materiality of the representations by Toyota City employees and evidence of damage, we find that the plaintiffs have supported every element of their fraud claim by at least a scintilla of evidence. The trial court did not err in denying the motion for judgment notwithstanding the verdict.

The Order Granting a New Trial
Having concluded that the court properly denied the JNOV, we must consider the propriety of the trial court's grant of a new trial. The trial court stated that a new trial was necessary "because the Court failed to give the jury a limiting instruction concerning the money paid to Ms. Catlin by the Defendant." The prior complainant, Ms. Annette Catlin, testified as follows:
"Q. Did you sue Toyota City?
"MR. MEELHEIM: I'm going to object to that on the grounds of relevancy, Your Honor. When she sued Toyota City, it clearly doesn't have any bearings in this lawsuit.
"THE COURT: Ladies and gentlemen, I'm going to go ahead and let this in to show design, scheme or knowledge or *79 intent to defraud, if any, in this action. That's the only purpose of letting this testimony in.
"MR. MEELHEIM: Judge, I'm going to object to this witness's testimony.
"THE COURT: Okay. Overruled.
"Q. You can answer.
"A. Yes, I sued them.
"Q. Were you paid any money?
"A. Yes.
"MR. MEELHEIM: I'm going to object to that, Your Honor.
"THE COURT: Overruled.
"Q. Do you recall how much money you were paid?
"MR. MEELHEIM: I'm going to object to the amount of money she was paid, Your honor. It's clearly not relevant to this lawsuit.
"THE COURT: I'm going to overrule. Go ahead. You may answer.
"Q. How much money did Toyota City pay you after you filed [your] lawsuit?
"A. $22,500.
"Q. Do you recall when they paid you this money?
"MR. MEELHEIM: Object to that, too, Judge, on the basis of relevancy. When she got the money doesn't have anything to do with this.
"THE COURT: I will sustain.
"MR. BUSHNELL: That's all, Your Honor.
"THE COURT: Okay. Mr. Meelheim?"
At the outset, we note that this case does not concern the broad issue of whether evidence of similar fraudulent acts is admissible. It is well settled that evidence of such similar acts is admissible. See generally C. Gamble, McElroy's Alabama Evidence, § 70.03(1) (3d ed. 1977). In order for evidence of a prior act to be admissible, the prior act must meet the requirements of similarity in nature and proximity in time. We find that the prior act in question here met those requirements, particularly in light of the limiting instruction from the trial court. Toyota City's argument that Ms. Catlin's testimony described events too remote in time to meet the standard of similarity is without merit. Davis v. Davis, 474 So.2d 654 (Ala.1985).
The focus of our analysis is on whether the trial court erred in admitting the testimony as to the settlement and amount paid to Ms. Catlin and whether it gave a sufficient limiting instruction regarding that testimony. The trial court did instruct the jury that the only purpose for which the evidence could be considered was "to show design, scheme of knowledge or intent to defraud, if any, in this action."
The effect of this evidence and of the limiting instruction must be examined in light of the strong policy in our law permitting proof of prior "bad acts" or schemes to defraud.
"[Previous] similar acts by different agents, both of whom act for the defendant, are admissible to show fraud, scheme, motive or intent.... Moreover, wide latitude is allowed with regard to testimony in fraud cases since often the perpetrator is the sole possessor of the actual knowledge of the fraud."
L.W. Johnson & Assoc., Inc. v. Rivers Construction Co., 532 So.2d 618, 623 (1988), discussing Winn-Dixie Montgomery, Inc. v. Henderson, 395 So.2d 475, 477 (Ala.1981), where the trial court was held to have properly allowed the testimony of a former employee about an earlier misrepresentation under similar circumstances. See also Kabel v. Brady, 519 So.2d 912 (Ala. 1987).
The record reveals that the money paid Ms. Catlin was paid as a settlement of her claim. Our law is well settled that evidence of an offer of settlement is generally inadmissible as proof of an admission against the party making the offer:
"It is the general rule that evidence of an offer to compromise or settle a disputed claim will not be received as an admission of the party making the offer. An offer of agreement to pay, or even payment, in the way of compromise, is not an admission of indebtedness nor of any fact from which indebtedness may be inferred."
*80 Griffin v. Hardin, 456 So.2d 1113, 1116 (Ala.Civ.App.1984). See also Super Valu Stores, Inc. v. Peterson, 506 So.2d 317 (Ala.1987), Millsap v. Williamson, 294 Ala. 634, 320 So.2d 649 (Ala.1975), and Indemnity Co. of America v. Pugh, 222 Ala. 251, 132 So. 165 (1931).
The policy behind this rule has always been that extra-judicial resolution of disputes by compromise and settlement is to be encouraged, and the admission into evidence of settlement negotiations and agreements would operate to curtail that policy. Our research has discovered no case that specifically addresses this policy issue in the context of facts similar to those in the case at hand. Generally, a question of the admissibility of an offer of settlement arises as a result of negotiations in the same case, not where a settlement is sought to be used against the settling party in a later and different case. However, we are persuaded that the policy considerations raised in this case must be resolved by applying the same analysis. That is, evidence that Toyota City had previously settled a fraud claim against it with Ms. Catlin for the amount of $22,500 could certainly be taken by the jury to be an admission of intentional fraudulent conduct on the part of Toyota City. That evidence was therefore prejudicial to Toyota City in this case, and the adoption by this Court of a rule allowing admission of such evidence in analogous cases would certainly deter similarly accused persons from settlement of claims against them in the future.
On the other hand, the admission into evidence of the amount of the settlement payment is not necessary to prove a pattern of fraudulent conduct. That pattern is established by Ms. Catlin's testimony that Toyota City sold her a vehicle that they falsely represented as never having been wrecked. We recognize that evidence of the amount of payment might have some probative value, but the rationale of allowing admission because the evidence might have probative value would apply equally well to those many cases in which our courts have held that an earlier offer of settlement in the same case was not admissible. In each of those cases our courts have held that the policy of denying admission of settlement evidence in order to encourage extrajudicial resolution of cases prevails over arguments for admission based on possible probative value.
Accordingly, we agree with the trial court's determination that it erred in admitting the evidence of Ms. Catlin's testimony regarding her settlement. It follows that the trial court did not abuse its discretion in ordering a new trial. Our law requires us to affirm the trial court's determination where that determination is properly grounded in the law. Progressive Specialty Ins. Co. v. Hammonds, 551 So.2d 333 (Ala.1989), and Sims v. Sims, 502 So.2d 722 (Ala.1987). Accordingly, the trial court's order of a new trial is affirmed, and the cause is remanded.
89-404APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
89-414ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
JONES, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., concur in the result.
MADDOX, Justice (concurring in the result).
On original deliverance, I dissented because I was of the opinion, based on the evidence presented, "that, as a matter of law, the Harrises failed to establish their claim of fraud in the inducement, in that they failed to prove that Toyota City intentionally deceived them or acted so recklessly as to amount to the same thing."
On application for rehearing, Toyota City apparently is satisfied with the holding in the original majority opinion that a jury question was presented on the question concerning the Harrises' claim of fraud in the inducement, because it makes no argument that this Court erred in this regard on original deliverance; consequently, I assume that Toyota City is satisfied if it can get a new trial on the issue of fraud. In *81 view of that assumption, I concur in the result.
HOUSTON and STEAGALL, JJ., concur.
NOTES
[1] Included in the provisions of the sales contract that Mr. Harris signed was a boldly printed provision that stated the following:

"Customer acknowledges that it has not been represented to him or her, by any agent of the seller, that the vehicle which is the subject of this purchase has or has not ever sustained damage prior to this purchase."
[2] We recognize that Ala.Code 1975, § 6-5-101, recognizes a "fraud" cause of action based on "innocent misrepresentation." In such a case, willfulness or recklessness would not be an element.