Larry H. Johnson and Alice M. Johnson appeal from a summary judgment entered in favor of State Farm Insurance Company and W. Kenneth McElhaney that was certified as final pursuant to Rule 54(b), A.R.Civ.P. We affirm.
The Johnsons' action against McElhaney and State Farm alleged reckless misrepresentation in a consumer transaction. The action is predicated upon statements that McElhaney, a State Farm agent, allegedly made to Ms. Johnson in a telephone conversation regarding flood insurance on the Johnsons' home. The crucial question is whether the Johnsons presented evidence that they justifiably relied on those statements. McElhaney and State Farm filed a motion for summary judgment with supporting evidence, in which they deny that McElhaney received any telephone call from Ms. Johnson or made any statement about flood insurance to the Johnsons at any time prior to the flooding of the Johnsons house on March 15 or 16, 1990. Therefore, the defendants made a prima facie showing that there was no genuine issue of material fact with respect to the reckless misrepresentation claim. The trial court, therefore, could properly grant McElhaney and State Farm's motion for summary judgment, unless the Johnsons, in response, produced substantial evidence of each element of the cause of action for misrepresentation. Hope v. Brannan, 557 So.2d 1208, 1210
(Ala. 1990). To determine whether the Johnsons produced substantial evidence of each element of this cause of action, thereby creating a genuine issue of material fact, we must accept as true the evidence most favorable to the nonmovants, the Johnsons. See, Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
The essential elements of reckless misrepresentation are (1) a misrepresentation of a material fact, (2) made recklessly without knowledge, (3) which was justifiably relied upon the plaintiffs under the circumstances, and (4) which caused damage as a proximate consequence. Harris v. M S Toyota, Inc.,575 So.2d 74, 76 (Ala. 1991).
The undisputed facts are as follows:
Johnson was 39 years old and had worked approximately 7 years as an aircraft mechanic. Ms. Johnson was 31 years old. From their depositions and Ms. Johnson's affidavit, it is evident that they have at least average intelligence.
On January 19, 1983, the Johnsons purchased a house located at 988 Glen Acres in Mobile, Alabama, from Mims Sales and Development, Inc.
The Johnsons had lived on Glen Acres for approximately two years before purchasing this house and had noticed the house for sale during that time. Several weeks before the closing, they met with Lambert Mims, the owner of Mims Sales and Development, Inc., and walked over the property with him. At that time, the Johnsons observed the drainage area or creek that ran along the back of the lot. They also noticed a watermark running totally around the house, approximately one and a half feet above ground level. The lot looked low to Mr. Johnson. These facts prompted the Johnsons to inquire of Mims whether there had ever been any flooding on the property. Mims replied by saying that to the best of his knowledge there had not been any flooding.
A few days later, they again met Mims at the property, walked around, observed the house, and again observed the watermark around the house. The Johnsons again questioned Mims about possible flooding and Mims said that to the best of his knowledge the property did not flood.
The Johnsons purchased the property. Ken McElhaney, Jr., son of the defendant McElhaney, attended the closing of the sale of the house in order to have the Johnsons sign an application for homeowner's insurance with State Farm. There was no discussion with McElhaney or anyone else at the closing about any flooding, potential *Page 976 
flooding of the property, or flood insurance.
Almost immediately after the closing, the Johnsons learned from numerous sources that indeed the property was subject to flooding and had previously been flooded. Three days after they moved in, Ms. Johnson heard from the woman who lived across the street that the house had been flooded twice in the past. The neighbor told Ms. Johnson that water had come through the windows and over the windows. Ms. Johnson did not necessarily believe this neighbor, because of a dispute she had had with her involving trash. When the Johnsons had their telephone hooked up, the telephone company's installer asked them if they had ever had water standing in the house. Ms. Johnson said that she did not know. The installer replied, "Well, I'm going to put you some new lines in because this house has held water before." Ms. Johnson testified that she believed this. Each time it rained, the water would come close to the house; this fact caused Ms. Johnson much worry. On one occasion, the flooding was so bad that it came all the way up to the carport, causing Ms. Johnson great concern. She called the county engineer's office often to ask what could be done about the drainage ditch.
Ms. Johnson finally contacted Bud Ames, of the county engineer's office. Ames visited the property and took pictures of the property on November 8, 1989. He told Ms. Johnson that the woman who had lived in the house before the Johnsons bought it had moved out because of the flooding and that Mims knew this before the Johnsons bought the house. Ames also told Ms. Johnson that Ames and Mims had walked around the lot before the Johnsons purchased the house and that Ames had told Mims there was nothing the county could do about the flooding. Ames told Ms. Johnson, in November 1989, that the house was in a flood zone and that it should never have been built there.
It was shortly after this that Ms. Johnson alleges that she had the telephone conversation with McElhaney, which McElhaney denies having. Reviewing the evidence concerning this alleged telephone conversation most favorably to the Johnsons, the nonmovants, one could conclude that the following transpired:
"Mr. McElhaney told [Ms. Johnson] that [the Johnsons] did not need flood insurance because this property was not in a flood zone. He also stated that flood insurance was too expensive and that it was not worth [their] while to purchase it because of the expense. These statements were made to [Ms. Johnson] by Mr. McElhaney before the property flooded." (Ms. Johnson's affidavit.)
Ms. Johnson called State Farm about flood insurance and talked with McElhaney. She did not ask him to issue flood insurance on the house. She merely discussed flood insurance with McElhaney, and he told her "it was not worth [the Johnsons'] while to get it because it was too expensive and [the Johnsons] really didn't need it" and "it was too expensive and it would not be worth [their] while to get that." (Ms. Johnson's deposition.) Ms. Johnson did not tell McElhaney that an employee of the county engineer's office had told her that the house was in a flood zone and should never have been built there or that the house had been flooded. She did not remember how much McElhaney told her the flood insurance would cost. She did not have flood insurance on the property at the time of her deposition and had not attempted to obtain such insurance.
After Ms. Johnson's telephone conversation with McElhaney, the Johnsons consulted a lawyer about the flooding problems. On February 1, 1990; the lawyer wrote a letter to Mims, informing Mims that the attorney was representing the Johnsons and that the value of their house had been impaired, because, he said, "it appears that the property flooded on a regular basis." Approximately two weeks before the house flooded, the Johnsons sued Lambert Mims, Mims Sales and Development, Inc., and certain other defendants (but not State Farm or McElhaney), alleging that those defendants had represented to the Johnsons that *Page 977 
the house had not been flooded and did not have a flood problem and alleging that those representations were false "and that the house had flooded in the past and was subject to a severe flooding problem." In each of the five claims in the original complaint, the Johnsons alleged that the house was subject to a severe flooding problem.
The Johnsons' house was flooded during the March 1990 south Alabama deluge. After that, the Johnsons amended their complaint to add McElhaney and State Farm as defendants, seeking damages from them for (1) reckless misrepresentation and (2) undertaking to advise the Johnsons of their flood coverage needs and then negligently advising them and negligently failing to assist the Johnsons in obtaining flood coverage on their house.
Clearly, there was substantial evidence of a representation made by McElhaney; and, because the property flooded and there was evidence that the property was in a flood zone, it could be reasonably inferred that the representation was made recklessly without knowledge. Whether the representation was of a material fact or of an opinion is a point of contention between the parties, but we need not decide that question, because the Johnsons did not, and could not, justifiably rely on this representation.
This case involved a consumer transaction involving the question whether there was a need to add flood coverage to a homeowner's insurance policy.
Prior to Chief Justice Hornsby's special concurrence inSouthern States Ford v. Proctor, 541 So.2d 1081, 1087-92
(Ala. 1989), this Court had permitted a consumer's contributory negligence to defeat that consumer's recovery in a fraud action as a matter of law. This Court had held that if a consumer plaintiff, acting as a reasonably prudent person exercising ordinary care, would have discovered the "true facts" before acting on the alleged misrepresentation, then, as a matter of law, the plaintiff could not have relied on the misrepresentation. Torres v. State Farm Fire Casualty Co.,438 So.2d 757 (Ala. 1983), overruled, Hickox v. Stover,551 So.2d 259 (Ala. 1989). In doing so, this Court had permitted the reliance element that had been developed in commercial transactions (Bedwell Lumber Co. v. T T Corp., 386 So.2d 413
(Ala. 1980)) to tread "into the arena of consumer transactions."Southern States Ford, 541 So.2d at 1090. Chief Justice Hornsby, in his special concurrence in Southern States Ford, wrote thatBedwell Lumber Co. was not incorrectly decided; and two of the five Justices who concurred in Bedwell Lumber Co., including its author, joined the Chief Justice's special concurrence inSouthern States Ford.
Chief Justice Hornsby proposed the following as the test for the reliance element in an action alleging consumer fraud:
 "A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.' "
541 So.2d at 1091-92.
Chief Justice Hornsby's special concurrence in SouthernStates Ford did not purport to have this new "justifiable reliance" standard apply to commercial transactions. The "reliance" element in fraud actions based on commercial transactions remained as it had been since Bedwell Lumber, 386 So.2d at 415:
 "[T]he representee's reliance must be reasonable under the circumstances; and, where a party has reason to doubt the truth of the representation or is informed of the truth before he acts, he has no right to act thereon. . . . We reaffirm the principle of the law of fraud that knowledge of such facts which ought to excite inquiry and which, if pursued, would lead to knowledge of other facts, operates as notice of these other facts."
Hickox v. Stover, supra, involved a commercial insurance scenario. The alleged fraudulent misrepresentation was: "[T]he [insurance] coverage we are offering . . . is *Page 978 
equal to the coverage provided by your existing [insurance] carrier. . . ." 551 So.2d at 261. The existing policy had an endorsement that negated the effect of a co-insurance provision ("amount of [insurance coverage in policy] represents 90% of the value of the property covered"). The replacement policy had the same co-insurance provision, but no endorsement negating that provision. The policy was sent to the insured and the insured was informed by separate letter to check its "equipment values" because the values stated in the new policy were the same as those stated for the last three years. The letter read, "The [new] policy has a 90% co-insurance provision which means the values are to be 90% of replacement. Please have someone check these values so that there will not be a problem if there is a loss." 551 So.2d at 262.
There was a loss and there was a problem. Five Justices on this Court held that the plaintiff's reliance on the representation ("the coverage we are offering . . . is equal to the coverage provided by your existing carrier") was not unjustified as a matter of law. The alleged misrepresentation was not so patently and obviously false that the plaintiff must have closed his eyes to avoid the discovery of the truth.[1]
If the Bedwell Lumber standard had been used, defendant Stover would have been entitled to a summary judgment as a matter of law, because plaintiff Hickox was notified in writing, not only by the policy, but by the separate letter, that if the values, which had been stated three years earlier, were not 90% of the replacement cost, then there would be a problem if there was a loss. Clearly, Hickox had knowledge of facts that ought to have excited inquiry (i.e., knowledge that if the insured value was not 90% of the replacement cost, he would have a problem if he had a loss). Bedwell Lumber.
Therefore, the standard that was proposed as a standard for reliance in consumer transactions only, was first applied in aper curiam opinion involving a commercial transaction only.
Since Hickox v. Stover, supra, the reliance standard recommended only for consumer transactions has been applied in both consumer and commercial transactions: Grimes v. LibertyNational Life Insurance Co., 551 So.2d 329 (Ala. 1989) (consumer transaction, summary judgment for defendant affirmed); AT TInformation Systems, Inc. v. Cobb Pontiac-Cadillac, Inc.,553 So.2d 529, 532 (Ala. 1989) (commercial transaction, judgment based on jury verdict for plaintiff affirmed, with four Justices stating "[w]hether reliance is justifiable in a given fraud action is a question of fact" and that "[c]onsequently, where there is a scintilla of evidence [substantial evidence after June 11, 1987, see § 12-21-12, Ala. Code 1975] that the reliance was justifiable, JNOV is improper"); Alfa MutualInsurance Co. v. Brewton, 554 So.2d 953 (Ala. 1989) (consumer transaction, judgment based on jury verdict for plaintiff affirmed); McDowell v. Key, 557 So.2d 1243 (Ala. 1990) (consumer transaction, judgment based on jury verdict for plaintiffs affirmed, with Court noting that Cahaba Valley DevelopmentCorp. v. Nuding, 512 So.2d 46 (Ala. 1987), in which this Court used the "reasonable reliance" test in Bedwell Lumber and affirmed a judgment for the plaintiff, had weaker facts thanMcDowell v. Key, supra); Ramsey Health Care, Inc. v.Follmer, 560 So.2d 746 (Ala. 1990) (commercial transaction, judgment based on jury verdict for plaintiff affirmed); Land Associates, Inc. v. Simmons, 562 So.2d 140 (Ala. 1989), cert. denied, General American Life Ins. Co. v. Simmons, ___ U.S. ___, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991) (consumer transaction, judgment based on remitted jury verdict for plaintiff affirmed); E S Facilities, Inc. v. PrecisionChipper Corp., 565 So.2d 54 (Ala. 1990) (commercial transaction, judgment based on jury verdict for plaintiff affirmed); Griggsv. Finley, 565 So.2d 154 (Ala. 1990) (consumer transaction, judgment based on jury verdict for plaintiff affirmed); Withersv. Mobile Gas *Page 979 Service Corp., 567 So.2d 253 (Ala. 1990) (commercial transaction (condemnation of right of way), summary judgment for defendant in fraud action affirmed); McConico v. Corley, Moncus Bynum,P.C., 567 So.2d 863 (Ala. 1990) (consumer transaction, summary judgment for defendant affirmed); Rodopoulos v. Sam PikiEnterprises, Inc., 570 So.2d 661 (Ala. 1990) (commercial transaction, judgment based on jury verdict for plaintiff affirmed); Standard Furniture Manufacturing Co. v. Reed,572 So.2d 389 (Ala. 1990) (commercial transaction — employee-employer representation concerning value of employee's pension plan; judgment based on jury verdict for plaintiff affirmed); Dixon v. South-Trust Bank of Dothan, N.A.,574 So.2d 706 (Ala. 1990) (commercial transaction, summary judgment for defendant reversed). Harris v. M S Toyota, Inc., 575 So.2d 74
(Ala. 1991), involved a consumer transaction. The jury returned a verdict for the plaintiffs and a new trial was granted to the defendant, but not on the reliance issue. A majority of this Court held:
 "This Court has abandoned the requirement of 'reasonable reliance,' whereby a party making a false statement prevailed whenever the person defrauded did not investigate the statement in order to discover fraud.
 "The present standard of 'justifiable reliance' requires . . . [t]he party receiving the representation . . . to be alert to statements that are patently false."
575 So.2d at 77.
Curtis v. Bill Byrd Automotive, Inc., 579 So.2d 590
(Ala. 1990), involved a consumer transaction in which a summary judgment for the defendant was reversed; Commercial CreditCorp. v. Lisenby, 579 So.2d 1291 (Ala. 1991), involved a consumer transaction in which a judgment for the plaintiffs was reversed and a judgment rendered in favor of the defendant; andHicks v. Globe Life Accident Insurance Co., 584 So.2d 458
(Ala. 1991), involved a consumer transaction in which a summary judgment for the defendant was reversed and the cause remanded. In Hicks v. Globe Life Accident Insurance Co., a Justice who was one of the five Justices who voted to adopt the "justifiable reliance" standard in Hickox v. Stover, supra, as the applicable standard, dissented and wrote that he would return to the reasonable reliance standard in consumer and commercial transactions, stating:
 "The traditional standard of 'reasonable reliance' provided a flexible concept adaptable to the circumstances of each case, including the relative sophistication and bargaining powers of the parties. The new standard of 'justifiable reliance' gives to parties claiming fraud undue leeway to ignore written contract terms and allows in some cases the automatic creation of a jury issue by a plaintiff's statement in contradiction of such written terms."
Hicks v. Globe, supra, at 469-70. (Almon, J., dissenting.)
For the edification of the bench and bar, we reiterate that the "justifiable reliance" standard, first proposed as a standard for consumer fraud transactions in Chief Justice Hornsby's special concurrence in Southern States Ford and adopted by five members of this Court as the standard in commercial fraud transactions in Hickox v. Stover, is the standard by which to test the "reliance" element in both consumer and commercial fraud transactions:
 "A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully understand the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is 'one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth.' "
541 So.2d at 1091-92.
Even using this standard, we conclude that the Johnsons could not have relied upon the alleged representations of McElhaney. The Johnsons knew that their house had flooded, and they knew that their house was in a flood zone and should never have been built there. The Johnsons did not share this information with McElhaney. *Page 980 
To allow the Johnsons to recover from State Farm and McElhaney for reckless misrepresentation would be to allow them not only to close their eyes to avoid the discovery of the truth, but also to close their eyes to the truth that was already known to them.
As we understand the Johnsons' second argument, it is no more than an attempt to assert that McElhaney and State Farm owed the Johnsons a duty to speak the truth. A duty to speak the truth is an essential element of fraud. Alfa Mutual InsuranceCo. v. Northington, 561 So.2d 1041, 1045 (Ala. 1990); ColonialBank of Alabama v. Ridley Schweigert, 551 So.2d 390, 396
(Ala. 1989); George v. Federal Land Bank of Jackson,501 So.2d 432 (Ala. 1986). However, the Johnsons did not request that State Farm provide flood insurance; McElhaney did not agree to and thereafter fail to procure flood insurance; considering the evidence most favorably to the Johnsons, it appears that they merely discussed flood insurance with McElhaney. In deciding the first issue in this case, we assumed for purposes of considering the summary judgment motion that what McElhaney said was a representation made recklessly; however, we now conclude that the Johnsons would have had to close their eyes and disregard all facts that they knew to be true, in order to rely on McElhaney's representations. We must conclude that any reliance by the Johnsons on what Ms. Johnson says he told her, was, as a matter of law, not "justifiable." The Johnsons knew, before talking with McElhaney, that when the storms of life were raging, their house would be in harm's way.
AFFIRMED.
ADAMS and INGRAM, JJ., concur.
HORNSBY, C.J., and SHORES, J., concur specially.
MADDOX and STEAGALL, JJ., concur in the result.
[1] On this issue, Hickox v. Stover, 551 So.2d 259 (Ala. 1989), was a 5 to 3 opinion, with Justices Maddox, Houston, and Kennedy each writing dissents to address the change in the law of reliance.