597 So.2d 660 (1991)
Christine CALLIS d/b/a Dream Inn
v.
COLONIAL PROPERTIES, INC.
COLONIAL PROPERTIES, INC.
v.
Bobby W. SPURLOCK and Patricia A. Spurlock d/b/a International Printing Company, Inc.
1900711, 1900732.
Supreme Court of Alabama.
December 6, 1991.
Rehearing Denied March 27, 1992.
Timothy C. Halstrom, Montgomery, for appellant Christine Callis.
John T. Alley, Jr. of Webb, Crumpton, McGregor, Davis & Alley, Montgomery, for appellee/cross-appellant Colonial Properties, Inc.
Jim L. DeBardelaben, Montgomery, for cross-appellees Bobby Wayne Spurlock and Patricia A. Spurlock.
ADAMS, Justice.
Christine Callis appeals from a summary judgment in favor of Colonial Properties, Inc. ("Colonial"), and Colonial appeals from judgment based on a directed verdict in favor of Bobby and Patricia Spurlock. Both appeals involve agreements by Callis and Spurlock with Colonial to lease from Colonial spaces in a shopping center known as McGehee Place, in Montgomery, Alabama.
Callis contends that she should be allowed to rescind her lease with Colonial because, she argues, she was fraudulently induced to sign the lease agreement. She contends that she expressed to a representative of Colonial a desire to be located in a shopping center that would attract a wealthy clientele. She further contends that she was assured that there would be no "discount" stores in the shopping center and that a men's store would be located near the location of her store within the center. Callis argues that she relied on these representations in signing the lease, and, therefore, she argues, she should be *661 entitled to rescind the lease, because, she says, neither of the representations proved to be true. In considering her argument, we note that the lease in question contains the following provision:
"This Lease and the schedules, rider and/or addends [sic], if any, attached, contain all covenants and agreements between Landlord and Tenant relating in any manner to the rental, use and occupancy of the Premises and the other matters set forth in this Lease. No prior agreement or understanding pertaining to the same shall be valid or of any force or effect; and, the covenants and agreements of this Lease cannot be altered, changed, modified or added to, except in writing signed by Landlord and Tenant. No representation, inducement, understanding or anything of any nature whatsoever made, stated or represented on Landlord's behalf, either orally or in writing (except this Lease), has induced Tenant to enter into this Lease. The submission of this document for examination does not constitute an offer to Lease, or a reservation of an option for the Premises, and this Lease becomes effective only upon execution and delivery thereof by Landlord and Tenant."
(Emphasis added.) The language in the lease signed by Callis states that only the representations in the lease itself induced her to enter into the agreement. Callis was presented with a copy of the lease agreement, and she even requested several changes in the lease, none of which had to do with the provision in question. The trial court did not err in entering the summary judgment as to her fraud and misrepresentation claim.
Callis further contends that Colonial breached certain provisions in the lease agreement. One of those provisions is set forth below:
"Tenant will not conduct any auction, distress, fire, bankruptcy, `going-out-of-business' sale, and shall not conduct or permit the type of business commonly called a `discount house or store,' surplus store, secondhand store, temporary outlet or any similar business or activity."
(Emphasis added.) Although Callis argues that Colonial breached this clause in the agreement by leasing space to "discount" stores, we note that the lease states that the tenant shall not conduct the specified activities. Nothing in the clause indicates that Colonial would be barred from renting space to whomever it wished, regardless of the business involved. Callis mentions a schedule that was attached to the lease agreement, and which indicates that a men's store would be located in the shopping center. Again, Callis failed to take note of the following statement on the schedule:
"This exhibit is diagrammatic and is intended only for the purpose of indicating the location of the demised premises in the project...."
We find no merit in her argument that Colonial breached the lease.
In its cross-appeal, Colonial contends that the trial court erred in directing a verdict in favor of the Spurlocks. The lease agreement signed by the Spurlocks contains the following provision:
"[T]his Lease becomes effective only upon execution and delivery thereof by Landlord and Tenant."
(Emphasis added.) It is undisputed that the Spurlocks signed the lease and sent it to Colonial. Colonial, in turn, was to sign the lease and send a copy to the Spurlocks. The parties do not dispute the fact that Colonial's general practice is to execute four originals and to send one of those originals to the lessee. In this case, all four originals remained in Colonial's files. The Spurlocks contend that they never received either an original or a copy of the lease, even though they claim that they made several requests for a copy.
Despite the clause in the lease, Colonial argues that the Spurlocks accepted the benefits of a lease and paid rent pursuant to the lease for approximately one year. The trial court determined that, because a copy of the lease had never been delivered to the Spurlocks, the lease was ineffective and that the Spurlocks had been renting *662 space from Colonial on a month-to-month basis. We agree.
It is clear from the evidence in the record that Colonial overlooked delivery of the lease. The clause in the lease is unambiguous in stating that the lease is effective only upon delivery.
For the foregoing reasons, the judgments are affirmed.
1900711AFFIRMED.
1900732AFFIRMED.
MADDOX, HOUSTON and KENNEDY, JJ., concur.
ALMON and STEAGALL, JJ., concur specially.
HORNSBY, C.J., and SHORES and INGRAM, JJ., concur in part and dissent in part.
ALMON, Justice (concurring specially).
I agree that the judgment against Callis is due to be affirmed for the reasons stated in the majority opinion. I also agree that the judgment for Spurlock is due to be affirmed, but I would like to add the following comments.
In Lott v. Douglas Oil Purchasing Co., 501 So.2d 1195 (Ala.1986), this Court affirmed a judgment that a holdover by a lessee had effectively extended a lease for a 10-year renewal term, even though the lease expressly required written notice of renewal by certified mail six months before the expiration of the primary term. Citing cases and other authorities, this Court held that the lessor's conduct constituted a waiver of the requirement of written notice of renewal.
In this case, the original lease recited that it would "become[] effective only upon execution and delivery thereof." In addition to this specific recitation, the general rule is that a lease is not valid unless it is executed and delivered.
"In accordance with the rules as to conveyances generally, delivery is necessary to give validity to a written lease. Therefore, it is competent for the parties to agree on the method of its execution and delivery, and if any material stipulation relating thereto remains unperformed by them, the instrument will not take effect as their lease."
49 Am.Jur.2d, Landlord and Tenant § 35 (1970) (citations omitted).
Where a tenant goes into possession under such an invalid lease, the law will ordinarily imply the relation of landlord and tenant. Id., § 47. The implied term will be a tenancy from month to month or a tenancy from year to year, as the circumstances indicate.
"Where an invalid lease reserves a rent payable in monthly instalments, and the tenant pays and the landlord accepts one or more monthly instalments, there is authority for the position that the tenancy becomes one from month to month. Moreover, it has been held in a number of cases that where a tenant enters under a lease for a term of years which is unenforceable under the statute of frauds, and pays the `monthly' rent as agreed or as provided in the lease, he becomes a tenant from month to month.... In other cases, where a lease for a definite term is invalid for reasons other than violation of the statute of frauds, it has also been held that where the lease provides for or reserves a `monthly' rental, the tenant's entry thereunder creates a tenancy from month to month."
Id., § 50. See Eddins v. Galloway Coal Co., 205 Ala. 361, 87 So. 557 (1921), which held that the parties had entered into a tenancy from month to month even though their purported oral lease was invalid because it had been entered into on a Sunday.
Thus, in this case, the purported lease between Colonial Properties and Spurlock never took effect because of the failure of delivery; instead, they entered into a tenancy from month to month, and I see no error in the trial court's holding that Spurlock was entitled to a summary judgment on Colonial Properties' counterclaim against him. In contrast, the parties in Lott v. Douglas Oil, supra, had entered into a valid lease, and this Court affirmed the trial court's holding that the lessor had waived a requirement for written notice of *663 renewal for a renewal term specified in the lease.
STEAGALL, J., concurs.
HORNSBY, Chief Justice (concurring in part and dissenting in part):
I must respectfully dissent from that portion of the opinion that affirms the summary judgment as to Callis's fraud claim. As the opinion notes, Callis claimed that she was fraudulently induced to sign the lease agreement. The opinion quotes language from the lease, language purporting to exclude all outside representations as inducements to entering the lease, as a basis for affirming the summary judgment on the fraud claim. This analysis is contrary to Alabama law on fraudulent inducement to enter a contract.
The evidence in this case indicates that Callis engaged in detailed negotiations with agents of Colonial with respect to the type of business she intended to operate and her requirement that similar sorts of "up-scale" businesses be located nearby. Callis testified that she was assured that the businesses that would be located in the shopping center would be of the same "class" as her proposed business. Further, Callis stated that she was promised that no discount stores or houses would be located in the center. Callis's stated belief that discount houses would not be permitted in the shopping center was supported by the language in her lease, and she had no basis to believe that the leases of the other tenants were in any way different.
Callis's testimony and the evidence of the history of her negotiations with Colonial is substantial evidence that she was induced to enter into the lease in question because of representations made by Colonial. There is also substantial evidence in the record that the representations used to induce Callis into executing the lease were false.
This Court recently addressed the law governing fraud in the inducement to a contract in Harris v. M & S Toyota, Inc., 575 So.2d 74, 77 (Ala.1991):
"Our law on the admissibility of fraudulent representations that are employed to obtain assent to a written contract has been stated as follows:
"`On the issues of whether a contract is void, voidable or reformable because of illegality, fraud, mistake or any other reason and whether the parties assented to a particular writing as the complete and accurate integration of their contract, there is no parol evidence rule to be applied. On these issues no relevant evidence, parol or otherwise, is excluded. No written document is sufficient, standing alone, to determine any one of them, however long and detailed it may be. No one of the issues can be determined by mere inspection of the written document. See 3 A. Corbin, Contracts, § 573 at 630 (1960). Accord, Battery Steamship Corp. v. Refineria Panama, S.A., 513 F.2d 735 (2d Cir.1975).'
"Richard Kelley Chevrolet Co., v. Seibold, 363 So.2d 989, 993 (Ala.Civ.App.1978) (emphasis added [in Harris]). See Ramsay Health Care, Inc. v. Follmer, 560 So.2d 746 (Ala.1990), Crispell v. Sunbelt Chrysler Plymouth, Inc., 544 So.2d 939 (Ala.1989), Mann v. Cherry, Bekaert & Holland, 414 So.2d 921 (Ala.1982), Blake v. Coates, 292 Ala. 351, 294 So.2d 433 (1974), and Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301, 101 So.2d 78 (1958)."
It is important to note that the principles set out in Harris have long been the settled law of this state.
"A stipulation in the written contract that there are no verbal understandings not incorporated herein does not estop the party to set up fraud in verbal misrepresentations inducing the contract. Fraud vitiates the contract as a whole. The law does not countenance a contract against the consequences of fraud."
Alabama Machinery & Supply Co. v. Caffey, 213 Ala. 260, 262, 104 So. 509, 511 (1925).
Because of the principles of law stated in Harris and Caffey, the trial court erred in entering summary judgment against Callis *664 based solely on the terms of the contract. Callis presented substantial evidence that she was induced to sign the lease in question because of fraudulent representations about the type of businesses that Colonial would allow in the shopping center. In light of this evidence, the lease, standing alone, cannot determine the issue of fraudulent representation. Whether Callis was fraudulently induced into signing this lease is an issue for the trier of fact; a consideration of that issue must include consideration of the representations Callis says were made to her outside the lease.
Accordingly, I dissent from the affirmance of the summary judgment as to the fraud claim. I would reverse the summary judgment on that claim and remand this cause to the trial court for further proceedings. I concur as to the holding in the other contract claims.
SHORES and INGRAM, JJ., concur.